UNION CHEVROLET CO. *v.* ARRINGTON *et al.*

(Division B. Jan. 4, 1932.)

[138 So. 593. No. 29668.]

818

Jas. T. Welch, Ellis B. Cooper, and W. S. Welch, all of Laurel, for appellant.

820

C. C. **Evans** and **Collins & Collins**, all of Laurel, for appellee.

Argued orally by **E. B. Cooper,** for appellant, and by
**C. C. Evans** and **Jeff Collins,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On the 3d day of October, 1929, a truck operated by an employee of appellant collided on a public highway with another truck on which Will Arrington was riding. As shown by the undisputed proof, the collision was the result of the negligence of appellant's said employee. Arrington was so seriously injured that in consequence thereof he died on the 7th day of October, 1929. Three days after Arrington's death the president of appellant company called at the farm occupied by the widow of the said deceased and stated to her that he would be glad to have her come, at a later and a convenient time in the near future, to the office of appellant company, there to discuss a settlement of the damages for the death of her husband.

On the 12th day of October, 1929, the widow, accompanied by her father, called at the office of appellant company, and as a result of their negotiations on this occasion, a settlement was agreed upon in the sum of one thousand two hundred fifty dollars plus medical, hospital, and funeral expenses. That afternoon the parties went to the office of appellant's attorneys, and there a formal release was executed by the widow for the sum of one hundred fifty-six dollars and twenty-five cents, that amount being her one-eighth part of said one thousand two hundred fifty dollars; and it was arranged that petitions for letters of guardianship for the several seven minor children of the deceased should be prepared by said attorneys as well as a petition to the chancellor for authority to settle for said children. On the 18th day of October, 1929, the widow again visited the office of appellant's attorneys, and she then signed and made affidavits to the petitions mentioned, and letters of guardianship were granted to her by the chancery court. On the 24th day of October, 1929, the petition of the guardian for the allowance of the settlement in behalf

of said wards was presented to the chancellor in vacation, and a decree was signed by the chancellor on said date granting the petition and authorizing the settlement. Soon thereafter appellant paid to the guardian the sum of one hundred fifty-six dollars and twenty-five cents for each of said minors, for which appellant took the guardian's several receipts and releases.

About a year later the widow in her own behalf and as next friend for each of her said minor children filed her bill in the chancery court setting up a complete history of the facts, including all the facts respecting the injury and death of said Will Arrington and of the subsequent steps taken as a result thereof. Among other things, it was alleged that at the time the petition for the settlement of the claims of the minors was presented to the chancellor, the latter by reason of illness was not then capable of intelligent action upon said petition and that the rights of said minors were not protected in the alleged hearing of said petition and that in fact the said proceeding was a fraud upon said minors. We forego a further recital of the allegations of the bill, except to say that the averments are sufficient upon the point to which we shall now direct our attention.

The testimony discloses that the petition for the settlement was presented to the chancellor by one of the attorneys for appellant, and that the only witness produced, or who was then made available to the chancellor, was the driver of appellant's said truck, this driver being the person who was at fault in causing the injury and death. There is nothing in the present record which shows what statement the said witness made to the chancellor. The decree of the chancellor recites, however, that the chancellor having heard the evidence finds "that the outcome of the cause of action against the said Union Chevrolet Company by the said wards herein named is doubtful," from which the inference arises that the said witness must have testified untruthfully in exculpation

of himself, else the chancellor could not have found the claim to be doubtful; for the actual facts of the case, as shown by the witnesses now before the court, make out liability against appellant beyond doubt.

There is thus brought into examination the meaning of, and the manner of administration under, the two sections of our statutes, sections 1710 and 1886, Code 1930, which authorize the compromise and settlement of doubtful claims. In recent years and since this court has held that these sections include claims for wrongful death, Fox v. Fairchild, 133 Miss. 617, 98 So. 61; Gunter v. Henderson Molphus Co., 149 Miss. 603, 115 So. 720; Rowe v. Fair, 157 Miss. 326, 128 So. 87, resort to said sections are of frequent occurrence, and their importance has now become such as to require a review of them by the court in connection with original principles in which they are imbedded.

Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the legislature to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and of the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced

by any waiver, or omission or neglect or design of a guardian, or of any other person, so far as within the power of the court to prevent or correct. Grif. Chan. Prac., secs. 45, 360, 530, 533. All persons who deal with guardians or with courts in respect to the rights of infants are charged with the knowledge of the above principles, and act to the contrary thereof at their peril.

The two sections of our statutes authorizing the settlement of claims are imbedded in those principles and are inseparable therefrom, both in meaning and in administration. To make a compromise settlement by a guardian effective against their wards in any case the judicial sanction thereof must be upon a real and not a perfunctory or merely formal hearing. Simmons v. Simmons, 85 W. Va. 25, 100 S. E. 743. For equal reason, the chancellor is not authorized to conduct a hearing and enter a decree wherein no witness in behalf of the wards is heard, or where the only witness is one who in the very nature of things is adverse to them. These sections contemplate and require that the chancellor in acting thereunder shall not proceed unless the interests of the infants are actually represented and protected at the hearing. To hear only the witness or witnesses who are adverse to the minors would be equivalent to taking a default against them—indeed, it would be equivalent in legal effect to a refusal to hear the witnesses in their behalf. And while it is permissible for an attorney to represent both sides in presenting such a petition, provided he fully advise the chancellor thereof, he must in so doing see to it that the testimony and the witness or witnesses who will give the full facts in behalf of the minors are presented and are heard, and if this is not done then there is a fundamental omission which amounts to legal fraud, however free from any thought of wrong the attorney may have been throughout. There was no thought of anything wrong in this case; but when in a matter of this kind ancient and ob-

vious principles are disregarded, the law looks to that disregard and not to the intent. We, therefore, amplify the application of the principles to which the court gave adherence in Keanum v. Southern Ry. Co., 151 Miss. 784, 119 So. 301, and hold that the chancellor was correct in his refusal to permit the said settlement decree to be interposed to the prejudice of the wards in this case.

But the chancellor set aside the settlement and the releases not only as to the wards but also as to the widow, and this he did on the ground, as stated in his opinion, that there was indecent haste on the part of appellant in effecting the settlement. The courts of this state have taken an advanced position upon the subject of indecent haste in the settlement of claims for personal injuries, a position more in accord with enlightened sentiment and good conscience than was evidenced in some of the earlier cases; but so far as we are now advised the cases in which the courts have emphatically spoken, about indecent haste, have been those wherein unconscionable settlements have been made with the injured persons themselves, at a time when they were still suffering from their injuries. Our attention is not called to any case wherein that holding has been applied to settlements made with the adult distributees after the death. We are of opinion that the manifest weight of the evidence in this case is such that the doctrine is not applicable to the widow, and that the bill so far as her individual distributive share is concerned should have been dismissed. Therefore as to that one-eighth interest the decree will be reversed, but in all other respects it will be affirmed.

Affirmed in part, and in part reversed.