## HENRY v. BAKER.

(Division B. Jan. 27, 1936.)

[165 So. 444. No. 31779.]

Dean Belk, of Holly Springs, and **R. R. Dinsmore** and **D. G. Fountain**, both of Jackson, for appellant.

Smith & Smith, of Holly Springs, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On March 4, 1930, appellee, at that time the guardian of the ward concerned herein, filed a petition in the chancery court under section 1882, Code 1930, which in the same language appeared in previous Codes, praying the court that the guardian be authorized for and in the name of the ward to purchase one acre of land therein described with the residence and improvements thereon as a home for the ward and her mother. The petition averred, and the facts were, that the ward was then a female child

of about eleven years of age, having no living father and no brothers or sisters, and that she resided with her mother in a rented house, having no other home or residence. It was shown that there were sufficient surplus funds on hand to make the purchase at one thousand eighty dollars, and that the property proposed was well worth that sum. The petition was sworn to by the guardian, and the mother joined in the petition and prayer under oath. Without the pursuit of further details, it may be said that in all formal respects the petition, the decree thereon, and all subsequent proceedings were in substantial compliance with all the requirements of the statutes.

Appellee was subsequently removed as guardian, and appellant was appointed guardian in succession. In due and proper time and in a proper manner the successor guardian took steps in the chancery court to vacate the transaction and proceedings mentioned in the foregoing paragraph and to recover for the ward the said sum of one thousand eighty dollars. The successor guardian averred that the property, at the time of the petition and decree first above mentioned, was worth far less than the sum paid for it, and that this fact was well known at the time to said first guardian; that said first guardian was personally interested in a pecuniary way in the property and in the sale thereof, and that the mother was personally interested because of the facts already mentioned; that the property had never been used as a home for the ward, and, in fact, was in such physical condition as to be unusable.

Upon the hearing, a number of witnesses were introduced. About half of them testified that the property at the time it was ordered purchased for the ward was well worth the sum for which it was sold to her, and some of these testified to facts which, if believed by the chancellor, would establish the good faith of the entire transaction. Others testified that the value of the prop-

erty at the time sold to the ward was not in excess of five hundred dollars, and some of them placed it as low as three hundred fifty dollars. The chancellor found in his decree that no fraud was practiced in the sale and in the proceedings therein about, and that the property was worth at the time what it was then represented to be worth, and the exceptions by the successor guardian were disallowed and dismissed.

Upon the disputed issues of fact shown by the record, there being enough in the evidence to sustain the findings of fact by the chancellor, we would affirm without comment, except for the feature now to be discussed. That feature is this: When the petition for the purchase of the property was presented to the chancellor, which was in vacation, and his order allowing same was made, there were no witnesses produced before the chancellor and examined under oath. But there is sufficient in the record to disclose that the chancellor did particularly interrogate the solicitor, who presented the petition, concerning the pertinent and material facts, and that the solicitor knew the facts of his personal knowledge and represented to the chancellor that he personally knew the facts and that the property was worth the price asked and that the other material facts stated in the petition were true. The question is then whether the unsworn statements of fact made to the chancellor by the solicitor of a guardian or executor or administrator and upon the personal knowledge of the solicitor is sufficient to sustain an order, such as was made in this case, without the sworn testimony of disinterested witnesses.

Except for the long course of practice later to be mentioned, we would probably answer that question in the negative. In Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593, we laid down the general principle that, upon any petition before the chancellor, wherein the substantial pecuniary interest of a minor is to be affected, the hearing must be a real and not a perfunctory

or merely formal hearing, that the chancellor is not authorized to conduct a hearing and enter a decree wherein no witness in behalf of the ward is heard, or where the only witness is one who in the very nature of things is adverse to the minor. We reaffirm that principle and the reasons therefor stated in the opinion in the Arrington case. In that case it did not appear whether the solicitor made any statement of facts to the chancellor, and we must assume that he did not, for the record in that case discloses that the solicitor had no personal knowledge of the controlling facts.

Most of our chancery districts are large in territorial extent. Solicitors presenting petitions in probate matters to the chancellor in vacation often travel long distances in so doing, and that was the case here. So far back as any of us can remember, it has been the custom and practice of the chancellors of the state, in probate petitions involving no considerable amounts, to interrogate the solicitor or solicitors, who present these petitions in vacation, touching the matters of fact involved, and to act upon the statements of fact made by the solicitor in response to such interrogation, if and when the solicitor responds upon his personal knowledge and the chancellor knows the particular solicitor to be honest and truthful.

The electorate of this state have exhibited the wisdom to retain in office the chancellors who have proved to be competent and faithful, and these chancellors learn by observation of, and experience with, the members of the bar who among those members are trustworthy and dependable; and, when a probate petition is presented by a member of the latter class, and the chancellor ascertains from him that he personally knows the facts, and not merely by hearsay, and upon interrogatories to the solicitor the chancellor is furnished the full facts upon which he can prudently act, we do not think that we would be justified in declaring upon appeal, and in the face of the stated long practice in such matters, that there

is no sufficient evidentiary basis upon which the decree or order can stand, although the solicitor in making his statements was not then and there sworn; for his oath as an attorney binds him to use no falsehood in the performance of his work as a minister of the law.

But, when the amount or interest involved is large, or the surrounding facts are such that a sound judicial caution should suggest the necessity of disinterested witnesses or where the interrogatories to the solicitor are merely perfunctory or where the solicitor has no personal knowledge or, if having it, he misrepresents the material facts to the chancellor, then we would have, in either of these situations, a different case from that here before us, and with such a case we would the better deal when it arises and is presented to us for decision.

Affirmed.