HAWKINS, Presiding Justice,
for the Court:
The Mississippi State Bar on April 12, 1988, filed a complaint against Attorney Y, a practicing attorney in Port Gibson. The complaint charged Y with violating the following disciplinary rules of the Code of Professional Responsibility of our State Bar: DR1-102(A)(5) and DR6-101(A)(2), and also Miss.Code Ann. § 73-3-35 (1972).
The complaint factually alleged that on October 31, 1979, Y filed suit in the U.S. District Court against a school teacher and a county school board. The district court complaint alleged that the teacher violated Y’s client’s civil rights while he was a student in her class. Following a three-day trial beginning October 5,1982, there was a jury verdict for the plaintiffs in the amount of $50,000 actual and $30,000 in punitive damages.
The Bar complaint further alleged that on February 28, 1983, the county superintendent of education was served with a writ of garnishment, which was never answered. On March 22,1983, Y moved for a default judgment against the county, which was sustained by the court on September 6, and default judgment was entered against the county school district. On December 5, 1983, the U.S. District Court magistrate entered an order directing the local bank, which held funds of the county on deposit, to disburse to “the plaintiffs” $118,128.24. Further, that the U.S. District Court then disbursed this money to Y’s firm, and that Y “then disbursed the money, less previously court-approved attorney’s fees, directly to his minor client’s mother without seeking court approval and without taking steps to set up a guardianship to administer the funds for the minor.”[1]
Y filed an answer to the bar complaint admitting its averments, and in explanation of failure to set up a guardianship for the minor, responded:
VIL Y admits the averments of Paragraph VII except that while admitting he did not take formal steps to set up a guardianship to administer the funds for the minor [name omitted], i.e., he filed no pleadings in the Court to set up a guardianship, he did so at the request of his client and upon receiving her assurance that another attorney would be engaged to administer the money for the minor.
The Bar filed a motion for summary judgment on August 22, 1988. The motion alleged that after the $118,128.24 was disbursed to Y’s firm by the U.S. District Court clerk:
[Y] then disbursed the minor’s share of the sums collected to the minor’s mother, [name omitted]. At the time [Y] distributed the minor’s funds to the minor’s *770 mother, a guardianship had not been established nor had approval been sought or received from the appropriate Chancery Court for disbursement of the minor’s funds. (Brackets ours)
The memorandum brief in support of the motion alleges as to this disbursement:
The money was deposited into the registry of the United States District Court on the same day and was then disbursed by the clerk of the Court to [Y’]s firm on December 6, 1983, by check made to the order of [minor’s name omitted] and [mother’s name omitted] c/o [an attorney] of [Y’s] firm. [Y] then disbursed the money, less previously court approved attorney’s fees, directly to [minor’s] mother, [mother’s name omitted], without seeking court approval and without taking steps to set up a guardianship to administer the funds for the minor [name omitted]. (Brackets ours)
In his September 8, 1988, response, Y admitted the allegations of the motion, but also alleged:
II. The allegations of Paragraph II are admitted except that as is shown by the Judgment attached hereto as Exhibit “A”, the suit was filed on behalf of both [minor’s name omitted] a minor by and through his next friend [name of minor’s mother] and also [minor’s mother] individually. The verdict returned by the jury was in favor of both, not just in favor of the minor as Paragraph II. apparently alleges. (Brackets ours)
[[Image here]]
VII.The only allegation of misconduct made by the State Bar in its Motion for Summary Judgment and accompanying brief is that Respondent “failed to follow statutory requirements to have a guardianship established by the Court for proper disbursement of the funds that were the property of the minor.” (Bar Brief, page 4.)
VIII.Respondent admits, and has admitted from the beginning (See Response of Respondent to Complaint and Transcript of Hearing) that he failed to set up a guardianship.
IX.The facts are uncontradicted (See Respondent’s Response to Bar Complaint and Transcript of Hearing) that Respondent advised the minor and his mother that court supervision of the minor’s funds was necessary, and was assured by the mother another attorney would be hired to handle the matter.
X.Under such circumstances, Respondent contends that while he may have made a mistake in not forcing the mother and minor to obtain a guardianship prior to disbursing the funds under such circumstances as presented in the memorandum brief attached hereto, such mistake does not rise to the level of unethical conduct and that he should be granted Summary Judgment on such issue.
In arguing the motion, Y’s counsel stated:
MR. RUTHVEN:
Yes, sir, and we don’t contest it, your Honor. But my whole point is that when you look at all the facts, that the boy was almost 18 years old, if [Y] had just sat on it for some 11 or 12 days, this wouldn’t be even a technical violation. [Y] was under the impression that the mother was going to put the money in a trust account and was going to an attorney in North Mississippi. I’d like to say that it was Will Colom, but I can’t. I mean [Y] assumed Will was going to do it, but she didn’t tell him Will Colom was going to do it, and [Y] didn’t cheek with Will Colom. [Y] is not trying to put the blame on Will Colom by saying what I’m saying; all I’m saying is [Y] assumed she was going to go to Will, and Will was going to do it, and it didn’t happen. (Brackets ours)
*771 On January 31, 1990, the complaint tribunal dismissed the complaint, holding that while Y had ignored the requirements of law when he failed to establish a guardianship for the minor, such failure did not rise to the “level of culpability to be considered a violation of the Code of Professional Responsibility warranting imposition of discipline.”
LAW
Important information is missing from this record. We are not informed whether the $36,226.06 (according to the Bar’s brief) Y paid himself as attorney was in whole or in part an attorney fee allowed him in U.S. District Court, or a sum authorized by a chancery court, or what he paid himself pursuant to some agreement he had with his clients. Of the remaining proceeds, we are not informed as to the sum due the minor’s mother, if any, and the sum due the minor.
These are serious, troubling gaps, but because the Bar did not see fit to charge Y with an unauthorized payment to himself, or with paying the minor’s mother individually more than was due her, we give him the benefit of the doubt, and go no further than the record before us.[2]
Miss.Code Ann. § 1-3-21 (1972) defines “infant” as a person under 21 years of age, and Miss.Code Ann. § 1-3-27 (1972) defines “minor” as a person under 21 years. Miss. Code Ann. § 93-19-13 (1990), however, authorizes persons eighteen years of age or over to enter into contractual relations affecting personal property. We have interpreted this as authority to settle a tort claim. Garrett v. Gay, 394 So.2d 321 (Miss.1981).
No complaint was ever filed with the Bar by the minor or any other person. This in and of itself is of no particular note. Even if a child thought his parent had converted his money, it would not be unusual for him nevertheless to take no step against the parent.
From the record, Y delivered at least $40,000 of the minor’s money to the minor’s mother. There was no legal authority for her to receive this money. Even if the sum due the minor had been less than $10,000, before the money could have been delivered to her, it would have been necessary to secure chancery court authority therefor. The court would not have authorized it, unless it found her fit and suitable to receive the funds. Also, she would have been specifically directed by the chancery court order to spend it solely for his use and benefit. Miss.Code Ann. § 93-13-211 (Supp.1990).
Because the sum due Y’s minor client exceeded $10,000, the only person authorized to receive it was a legal guardian duly appointed by a chancery court which had jurisdiction of him. Miss.Code Ann. § 93-13-1, et seq. Legal guardians are under strict, carefully circumscribed control of the chancery court. Miss.Code Ann. §§ 93-13-17; 93-13-11; 93-13-35; 93-13-59; 93-13-67; 93-13-77 (1972 & Supp.1990). Y admits he failed to comply *772 with the Mississippi statutes dealing with minors, and that he made a mistake. He claims he relied upon the minor’s mother to contact Colom to attend to taking the necessary legal action.
The question before us is whether Y’s conduct is of consequence under the rules of discipline of the Bar.
We find that it is. In Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593 (1932), and again in Mississippi State Bar v. Moyo, 525 So.2d 1289 (Miss.1988), this Court went to unusual effort to point out the special care and solicitude the law extends to minors. Chancery courts are the “superior guardian” for minors. Union Chevrolet, 162 Miss, at 826, 138 So. at 595. Lawyers, of course, are all officers of the chancery court, and owe it fidelity as well as to their client. Miss.Code Ann. § 73-3-35 (1972). The language of these decisions should not require repetition here, and we only note that it is an appalling thought that any licensed attorney in this state would dare disburse a penny of a minor’s funds without complete and clear chancery court authority therefor.
In Y’s defense, he said he relied on the minor’s mother to contact Colom and take the necessary legal steps as to the minor’s money. And, after all is said and done, she was his client, too, the minor’s natural mother, and having been associated with her for over two years, he had an opportunity to observe her and appraise her character. If Y trusted her, what then was wrong in believing and accepting her promise to have a guardianship or “trust fund” set up for her minor son?
Plenty.
First, even if this minor had been an adult, Y had an absolute non-delegable duty to see that his money was paid to him personally. The minor was his client. This was a responsibility Y owed his client.[3] Instead, he delivered his minor client’s money by check payable only to his mother, following which she was free to cash and spend as she chose. Y’s client was a minor, and due special solicitude and care by Y to be absolutely sure that none of his money was converted, but paid solely to a legally authorized person. Even though she was his mother, Y trivialized this solemn obligation by turning over the minor’s money to someone not his legal guardian. A minor’s money in Moyo, supra, was turned over to a natural mother, too, and little good it did him. Y reveals a shocking lack of a sense of responsibility of an attorney to a minor client in delivering this minor’s money to a parent with no safeguard or restriction.
Moreover, the record is silent as to Y making the slightest effort to advise or instruct the mother as to her absolute obligation not to spend any of the minor’s money, and to promptly see that a legal guardian was appointed for him by a chancery court. He left it up to her, and to Colom, if she contacted him. Then, there is nothing in the record to suggest that Y ever contacted Colom or the mother to see that she had indeed delivered the minor’s money to a legal guardian. Y got his fee, gave the mother his client’s money, and sent her on her way. After that, insofar as the record reveals, he forgot about the matter until called to account by the Bar.
This minor was entitled to receive a small fortune, at least $40,000. It belonged to him, and he was Y’s client. Yet, Y deliberately failed to perform a professional duty he owed this boy to safeguard these funds. He simply turned over the boy’s money to his mother with no caution or instructions, and made no further inquiry.
We do not have the defense from Y that he was unaware of this professional responsibility, and we would reject it if he made such a preposterous claim. No practicing attorney can be that ignorant.
A lawyer who deals with his minor client’s money as Y did with this minor *773 client shows a shocking sense of professional responsibility. Y violated DR1-102(A)(5 and 6) by engaging in conduct prejudicial to the administration of justice and DR6-101(A)(2 and 3) in neglecting to perform his legal obligation to his minor client.
Y’s conduct merits a public reprimand. Because of his contrition, we reduce this to a private reprimand. We hope we will not again encounter failure of an attorney to perform his professional obligation to a minor client. Such an attorney can have little hope he will escape with no more than a private reprimand.
No words should be necessary from any court to remind a lawyer of his obligation to his minor client, his duty to painstakingly fulfill it, and that there are no shortcuts. This should be ingrained in his marrow. To the extent that it is not so ingrained, then to this extent he is not fit to practice law.
REVERSED FOR PRIVATE REPRIMAND.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, PITTMAN and BANKS, JJ„ concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.

. While of dubious materiality to our decision, the Bar’s complaint continues with an interesting saga of the county school litigation. On January 12, 1984, the district attorney filed a motion to set aside the default judgment and for an injunction, alleging that there was no lawful authority to take a default judgment against the county school board. On February 21, 1984, the U.S. District Court judge set aside the default judgment, which Y’s clients unsuccessfully attempted to appeal to the U.S. Court of Appeals. Again, on December 17, 1985, the U.S. District Court set aside the default judgment, and ordered the plaintiffs to cease spending any money received by them from the bank, and to account for the money within twenty days.
Y responded on January 24, 1986, that the entire funds had been spent prior to the December 17, 1985, order.

. Y’s brief has attached a copy of his letter, dated March 12, 1987, to counsel for the Bar stating that following entry of judgment the court awarded him, Wilbur Colom and Beverly Mitchell attorney’s fees and expenses.
The letter further states that the minor’s mother, then divorced and remarried, had moved to a north Mississippi county, and that prior to receipt of any funds she had told him she wanted Colom, who lived in Columbus, to "handle the establishment of a trust fund for [minor],” and that it would "incur unnecessary expense for me to travel to north Mississippi from [name of town omitted] in the event an appearance was necessary.” The letter further states he would have been delighted to have handled a non-adversarial guardianship proceeding, and was disappointed "the Plaintiffs did not choose for me to handle [minor’s] affairs."
The letter further states that if any prejudice had occurred it was subsequent to his representation, and not as a result of his acts. He concluded by stating it would have been unethical to have imposed himself on his clients, and that he had done nothing unethical.
Also attached to the brief is a copy of a June 10, 1985, order of the chancery court of the north Mississippi County generally removing the minor’s disabilities of minority. This order names him (using his step-father's name as his last name), however, and is filed by his stepfather and mother as "Next Friend.” The minor, if the order is correct, was 21 on January 2, 1987.

. Y’s counsel argued that had the money been held for a few more days, the minor could have received it in his own name. If this were the case, why did he not make a separate check to the minor? He could either have held it until the minor reached his 18th birthday, or postdated it beyond the minor’s birthday and delivered it to him. There is a distressing lack of advice or counsel being given by Y to his clients as to these funds.