COBB, Justice,
Concurring:
¶ 55. I agree with the majority’s application of existing law to all issues presented in this case, and I strongly support the very important and valid public policy of encouraging, facilitating, and promptly finalizing adoptions. However, I believe that this Court has moved too far away from protecting vulnerable minor parents in the adoption process. Thus I write separately to express this concern, with the hope that either by case law or by statute, some protection might be made available in certain circumstances.
¶ 56. Here, an unmarried 17-year-old mother was taken in by a childless couple who had expressed an interest in her 15 month old daughter from the moment the couple met her. By taking the mother and child into their home and effectively supporting them, the couple applies strong emotional pressure on the mother to let them adopt her daughter, promising, inter alia, that the mother will be allowed ample contact with the child afterwards. Without independent legal counsel, the young mother goes to the couple’s lawyer and signs away her full legal rights to the child. Only three weeks later, the mother realizes the gravity of what she has done, regrets her decision, and asks for her child back. But she is virtually thrown out of the couple’s house and denied any future contact with her child. Going to court, she finds that she has no recourse, and learns, too late, that the moment she signed the document consenting to the adoption was her last moment as her baby’s legal parent, as established by prior decisions of this state.
¶ 57. In addition to the interests of the infant child D.N.T., there are also the interests of the other minor in this case, C.M.T., which should not be forgotten. I question the analysis of the trial court and the majority which concludes that the physical act of giving birth automatically bestows upon a minor mother, however young and vulnerable, the capacity to consent to an adoption without any advice or counsel from lawyer or layman, regarding the law and the consequences of signing a consent form. I am not at all convinced that the Legislature, when it enacted Miss. Code Ann. § 93-15-103(2), contemplated this Court’s pronouncement that the single act of signing a consent to adoption could forever remove the child from its parent without counsel, especially with regard to a minor mother.
¶ 58. I am mindful of the fact that it is not the place of this Court to rewrite the statutes. That should not end the issue, however, because this Court does have a constitutional duty to protect children- — -be they 15 months old or 17 years old — insofar as that is consistent with the law. This Court has said:
By our Constitution and ancient law, a court of equity is the superior guardian for all persons under a disability, and under a duty to make a searching inquiry on matters affecting their welfare. *713 Indeed long ago in Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593 (1932), in a case affecting only a monetary interest of a minor, and in which the technical statutory requirements for settlement of his claim had been followed, Justice Griffith speaking for this Court said this alone was not enough. “These (code sections dealing with settlement of minors’ claims) sections contemplate and require that the chancellor in acting thereunder shall not proceed unless the interests of the infants are actually represented and protected at the hearing.”
In re Adoption of A Minor, 558 So.2d 854, 857 (Miss.1990) (emphasis added). As the “superior guardians” of minor parents, the chancellors of this state, and the appellate judges who review their decisions, have a duty to those children as well as to the children of those children. See also Alack v. Phelps, 230 So.2d 789, 793 (Miss.1970) (at common law, court of equity will protect children’s rights); Wheeler v. Shoemake, 213 Miss. 374, 57 So.2d 267 (1952) (under “traditional equity jurisdiction,” children “[f]rom the earliest times ... were regarded as entitled to the special protection of the state”). The chancery courts are guardians “of all minor children” in their districts, and may appoint guardians ad litem as needed. Adams v. Adams, 467 So.2d 211, 216 (Miss.1985).
¶ 59. Where the minor parent’s own parent or guardian is not involved with the adoption, the minimum safeguard for protecting the minor parent’s rights is independent legal counsel. A guardian ad li-tem should be appointed by the 'court where the minor is unable to secure such counsel. The relatively insignificant delay and expense involved in appointing a guardian ad litem should not outweigh the importance of ensuring that the minor parent understands the irrevocable nature of the proceedings. “Through the agencies of next friends, guardians ad litem, masters, and the like, the court [of equity] acts with all care and solicitude to the preservation and protection of the rights of infants .... ” Billy G. Bridges & James W. Shelson, Griffith Mississippi Chancery Practice § 45, at 57 (2000).
¶ 60. I am not unmindful that this Court has rejected any need for a guardian ad litem to be appointed on a minor parent’s behalf. See In re J.M.M., 796 So.2d 975, 982-83 (Miss.2001). Indeed, I joined the majority opinion in that case. However, the present case is distinguishable on several grounds:
(1) The adoption in J.M.M. was carried out with the full participation and consultation of the minor’s family. Here, C.M.T. acted only with the participation of the adopting parents and their attorney.
(2) The natural mother in J.M.M. executed a document clearly entitled “SURRENDER OF PARENTAL RIGHTS AND CONSENT TO ADOPTION.” Here, C.M.T. signed a “COMPLAINT FOR ADOPTION” that mostly focused on the accession to parental rights by the adopting parents. A single sentence on page five of the complaint expressly states:
That she, being the natural mother of said child, is of the opinion that it is in the best interest of said child that she be adopted to [the adopting parents] and hereby relinquishes all parental rights to said child.[15]
*714 C.M.T. had been told that she could continue to visit with D.N.T. and relying on that, she gave up her parental rights. There clearly is no explicit warning that her decision is irrevocable.
(3) The mother in J.M.M. initialed every page in the agreement and even every line of one paragraph, one written in “heavy print ... that is really the core of the surrender” and which was in all-capitals, rather than buried within the complaint as in the present case. Additionally, there was testimony that the agency worker sat down with J.M.M.’s minor mother and read through that section with her. The corresponding section in C.M.T.’s document, as we have seen, was not similarly prominent; C.M.T. may not even have read it; and C.M.T. testified that no one would answer her questions or explain things to her when she reviewed and signed the paper. The adoptive parents’ attorney was not even present.
(4) The adoption in J.M.M. was conducted through the auspices of an established adoption agency without a direct interest in the proceedings. The adoption of C.M.T.’s baby was conducted by the adoptive parents, who had taken C.M.T. and her baby into their home and who were supporting both minors at that time. The dangerous potential for misrepresentation and overreaching was therefore magnified. See In re Adoption of A Minor, 558 So.2d at 857 (“The daughter, a minor herself, and also the grandchild were living in the home of the Smiths [the adoptive parents]. While we do not for a moment intimate that in this case it in fact occurred, such a factual scenario affords too much opportunity for over-reaching for comfort.”).
¶ 61. Further, this Court’s pronouncement in J.M.M. that a guardian ad litem need not be appointed for a minor parent was arguably dicta, since as the opinion first points out, the issue of the guardian ad litem was not raised and thus was procedurally barred. Id. at 982. Because the alternative argument was superfluous to the result, its status is that of persuasive dicta, not of binding precedent. “When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.” Seminole Tribe v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (emphasis added); Gochicoa v. Johnson, 238 F.3d 278, 286 n. 11 (5th Cir.2000) (“A statement should be considered dictum when it ‘could have been deleted without seriously impairing the analytical foundations of the holding — [and], being peripheral, may not have received the full and careful consideration of the court that uttered it.’”) (quoting In re Cajun Elec. Power Co-op., Inc., 109 F.3d 248, 256 (5th Cir.1997)) (emphasis added); Collins ex rel. Smith v. McMurry, 539 So.2d 127, 130 (Miss.1989) (“statement which qualifies as dictum does not have a binding effect”).
¶ 62. Nevertheless, even if dicta, the reasoning of J.M.M. should be considered. The majority quotes § 93-15-103(2), which provides that parental rights may be terminated “regardless of the age of the parent.” The majority also noted that the adoption of J.M.M. was subject to the three-day waiting period of § 93-17-5.
¶ 63. But there is no conflict between a minor parent’s having the power to consent to an adoption and her being provided adequate legal advice as to the nature and consequences of her act. In any event, as already stated, the courts of equity have broad powers to protect those minors in *715 their care. Equity “will rescue [children] from faithless guardians, designing strangers, and even from unnatural parents; and will, in general, take all necessary steps to conserve the best interest of these wards of the court.” Bridges & Shelson, supra, § 45, at 57 (emphasis added). While adoption is indeed a creature of statute, the Legislature may not enact a statute that subtracts from the equitable powers held by courts under our state constitution. Davis v. Davis, 194 Miss. 343, 346, 12 So.2d 435, 436 (1943) (reaffirming “equity powers ... over infants”). By protecting minors before it, this Court does not overreach and usurp legislative prerogative; rather, it fulfills its constitutional duty to protect the children of this state.
¶ 64. Nor is the statutory waiting period relevant here, since C.M.T.’s baby was adopted several months after her birth. Therefore, J.M.M. does not control this case.
¶ 65. It is time for this Court to seriously consider adopting the practice of our neighboring states. Alabama and Arkansas specifically provide for independent legal counsel for minor parents in adoption proceedings. Ala.Code § 26-10A-8(a) (2001) (“Prior to a minor parent giving consent a guardian ad litem, must be appointed to represent the interests of a minor parent whose consent is required.”); Ark. Code Ann. § 9-9-208 (2002) (“If the parent is a minor, the writing shall be signed by a court-ordered guardian ad li-tem, who has been appointed by a judge of a court of record in this state to appear on behalf of the minor parent for the purpose of executing consent.”). Many other states also have some requirement that the minor parent be provided counsel before entering into a momentous and irreversible surrender of her precious parental rights.[16]
¶ 66. Further, in all equity, providing a guardian ad litem to a minor parent presents no impediment to legitimate adoptions (and even should make them all the more secure from challenge), whereas it offers literally the only chance under our rigorous statutory and case law to protect a minor parent from unjust and unfair pressures and misrepresentations.
¶ 67. Our case law has evolved, almost heartlessly, and it now says that once the paper is signed, the child is considered “abandoned,” and any hope of reversing the proceeding is effectively lost, unless the minor can meet an extraordinarily high burden of proof to show undue influence.[17] *716 This is true no matter whether the change of heart occurs within a day or two, a week or two, or a year or two. How can this be considered equitable? It is crucial, in my opinion, that the court of equity should be completely satisfied that the minor parent has been advised as to what signing the document to consent to the adoption of her child really means. Adoptive parents and their legal counsel cannot be relied upon to protect the minor parent’s interest. Only independent legal counsel, if necessary a guardian ad litem, can fulfill the court’s duty to the minor parent.
¶ 68. In any event, these arguments come too late for C.M.T. Her daughter has been living with the adoptive parents for three years, thinking of them as her parents, and it is unlikely that her best interests would be served by disrupting her life further. However, this Court has the opportunity, from this day forward, to implement a simple and adequate safeguard to uphold the most sacred and fundamental of rights in the field of family law, a parent’s right regarding her child.
¶ 69. This Court should seize this opportunity to seriously evaluate the direction in which our case law is headed with regard to a minor’s uninformed and unprotected consent to the adoption of her child. If we simply follow our existing precedents, we multiply the chances that miscarriages of justice will occur. Requiring that a minor parent be fully advised of her legal rights before she signs her child away is not only compatible with the Legislature’s enactments, it is also in the best spirit of our constitutional duty to do equity to minors.
GRAVES, J., JOINS THIS OPINION.

. While this language does imply irrevoca-bility, it is less obvious that a 17-year-old girl who, as the record shows, was not educationally gifted, would infer as much, particularly where she had received contrary assurances from the adoptive parents.

. See, e.g., Conn. Gen.Stat. § 45a-715(f) (2002); Del.Code Ann. tit. 13, § 1106(d)(3) (2001); Kan. Stat. Ann. § 59-2115 (2001); Ky.Rev.Stat. Ann. § 199.500(2) (2002); La. Ch.Code Ann. § 1113(A) (2001) (minor parent’s own parents must join in petition); Mich. Comp. Laws Ann. § 710.43(4) (2002); Minn.Stat. § 259.24(2) (2002); Mont.Code Ann. § 42-2-405(2) (2002) (independent counsel required in direct parental placement adoption); R.I. Gen. Laws § 15-7-10 (2002); Wash. Rev.Code § 26.33.070 (2002).
While it is true that these states have chosen to protect minor parents by statute, "the broad inherent equity powers of the chancery court” have been held to allow (for example) this Court to abolish the title system of post-marital property division in favor of equitable distribution, when virtually every other state which made that same transition did so by statute. See Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). The mere appointment of a guardian ad litem for minor parents pales by comparison.

. It is disconcerting to contrast our case law on wills, where a confidential relationship creates the presumption of undue influence, with our case law on adoption. Had it been a question of C.M.T. bequeathing them something of monetary value, the adoptive parents surely would have been found to be in a confidential relationship with C.M.T., and she would have been entitled to the presumption. But since she was only giving them her child, the law says otherwise. This is contrary to logic, reason, and common sense.