LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Robert and Amanda Corkern were married in June 2001. They were granted an irreconcilable-differences divorce in the Chancery Court of Amite County in January 2005. The couple has a daughter who was born in 2003. The parties agreed that Amanda would have physical custody of the child, and Robert would pay alimony and child support.
 

 ¶ 2. In May 2007, Robert filed a complaint for modification of the judgment of divorce. He filed several amended complaints, the last of which was filed on January 30, 2008. The final complaint asserted that Tri-Lakes Medical Center, his primary source of income, had entered bankruptcy, and he was no longer being paid. In addition to a reduction in child support and alimony, Robert requested additional visitation with the couple’s daughter.
 

 ¶ 3. Amanda filed a counterclaim, asserting that Robert was in arrears on multiple payments owed to her. The chancellor
 
 *1231
 
 granted Robert a clarification of his visitation schedule. However, the chancellor denied a reduction in alimony and child support, finding that Robert had failed to prove by a preponderance of the evidence that his income had sufficiently declined or that there had been a material change in circumstances. The chancellor also found that Robert had provided false information to the court regarding his assets, income, and expenses. Further, the chancellor found that Robert was not entitled to relief because he had come to court with unclean hands.
 

 ¶ 4. Robert now appeals, asserting the following issues: (1) he was entitled to a reduction in alimony, child support, and other support payments to Amanda because his obligations to her exceeded thirty percent of his income, and (2) his reduction in income demonstrated a material change in circumstances. Finding no error, we affirm.
 

 FACTS
 

 ¶ 5. Robert and Amanda were married for approximately four years. The couple resided in Amite County, Mississippi. Robert worked as a physician during the marriage, and Amanda stayed at home with the couple’s child. After the divorce, Robert moved to Batesville, Mississippi, and Amanda moved to Madison, Mississippi. Robert purchased a home for Amanda in Madison pursuant to the couple’s property-settlement agreement. Robert remarried and was involved in a variety of business ventures related to the medical field. Robert’s new wife is a registered nurse, and she was paid a salary from Robert’s businesses. Amanda had not remarried at the time this case was filed. The property-settlement agreement signed by the parties stated that Robert was to support Amanda so that she could be a stay-at-home mother. Thus, Amanda has not returned to work.
 

 STANDARD OF REVIEW
 

 ¶ 6. This Court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.”
 
 Sanderson v. Sanderson,
 
 824 So.2d 628, 625-26 (¶ 8) (Miss.2002) (citation omitted).
 

 DISCUSSION
 

 I. REDUCTION IN ALIMONY AND CHILD SUPPORT PER THE PROPERTY-SETTLEMENT AGREEMENT
 

 ¶ 7. Upon their divorce, Robert and Amanda entered into a property-settlement agreement that they had drafted. One of the provisions of the agreement states:
 

 That notwithstanding the provisions of this agreement, should Husband’s obligations under his agreement ever exceed thirty percent of his gross salary, then Husband shall be allowed to make adjustments such that he shall not have to pay more than thirty percent of his gross before tax salary. In the event Husband exercises this provision and Wife must retain counsel to protect her rights, Husband agrees to pay any and all cost of court associated with any action filed by Wife, including but not limited to Wife’s attorney fees.
 

 ¶ 8. Robert asserts that his gross monthly income is $8,666, and his monthly obligation to Amanda is $9,648. Robert argues that since his obligations to Amanda exceed his total monthly income, he should be entitled to an adjustment based on the above provision.
 

 
 *1232
 
 ¶ 9. In denying Robert’s request, the chancellor found that Robert had failed to present an accurate accounting from which to base a decision. The chancellor stated: “His [financial [declaration contains so much false and incomplete information that this [c]ourt can reach no other conclusion than to find that Robert was intentionally attempting to mislead the [c]ourt as to his financial condition.” Even Robert’s certified public accountant testified that the chancellor had insufficient information to determine whether Robert had the cash available to pay his bills. The chancellor found that Robert’s losses were “paper losses of income” designed to minimize his tax liability. Regarding the losses that were reported, Robert’s accountant testified: “I’m not saying [the way the previous accountant reported it was] right, but I wouldn’t want to say that in front of the IRS.”
 

 ¶ 10. The chancellor further found that Robert’s request should be denied because Robert had come to court with unclean hands. “The clean[-]hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.”
 
 Bailey v. Bailey,
 
 724 So.2d 335, 337 (¶ 6) (Miss.1998). Robert had failed to comply with multiple obligations set out in the property-settlement agreement. For example, Robert had failed to pay expenses of the minor child on time; he had failed to provide credit cards for Amanda after cancelling her credit cards without court approval; he had failed to pay alimony for three months; he had failed to pay the agreed upon furniture allowance; he had failed to execute a warranty deed or deed title of Amanda’s residence to Amanda; and he had failed to pay the neighborhood fees and assessments associated with Amanda’s residence.
 

 ¶ 11. Robert argues that the chancellor’s order was in error because it states that Robert must prove “a thirty percent (30%) decrease in his income, such as would trigger the modification under the terms of the parties’ agreement.” We find that this misstatement by the chancellor did not affect the outcome of this case. The modification provision in the property-settlement agreement does not require Robert’s income to decrease by thirty percent; rather, it allows for a modification if Robert’s obligations to Amanda exceed thirty percent of his income. Regardless, the chancellor found that it was impossible to determine Robert’s income with the financial statements he presented. We find that the chancellor’s decision was supported by substantial evidence. This issue is without merit.
 

 II. MATERIAL CHANGE IN CIRCUMSTANCES
 

 ¶ 12. Robert also argues that if he failed to prove his obligations to Amanda exceeded thirty percent of his income, he demonstrated a material change of circumstances sufficient to modify child support and alimony.
 

 ¶ 13. A chancery court may modify an award of support if there has been a material change of circumstances that “occurred as a result of after-arising circumstances not reasonably anticipated at the time of agreement.”
 
 Dix v. Dix,
 
 941 So.2d 913, 916 (¶ 15) (Miss.Ct.App.2006) (citing
 
 Varner v. Varner,
 
 666 So.2d 493, 497 (Miss.1995)).
 

 ¶ 14. Robert asserts that his income had declined substantially since the divorce. He attributes this to the discharge of obligations owed to him by Tri-Lakes when it declared bankruptcy. Also, he sold an airplane that resulted in a taxable profit of nearly one million dollars. He asserts these two events made him unable to pay his taxes. He states that his in
 
 *1233
 
 come from his medical ventures fell from $666,291 in 2006 to a negative $450,000 in 2007. He asserts that the decline in his hospital business due to Tri-Lakes’ bankruptcy was not anticipated at the time of trial. Robert states that he is making an effort to sell off assets to pay some of his debts.
 

 ¶ 15. As stated above, the chancellor was unable to determine if Robert’s income had changed and, if so, to what extent. The chancellor found that without an accurate accounting, Robert had failed to prove that a material change of circumstances had occurred. The chancellor further noted that even if Robert had suffered a loss in income, he had sufficient education and experience to find other employment to increase his income. We cannot find that the chancellor’s decision was manifestly wrong or clearly erroneous. This issue is without merit.
 

 ¶ 16. THE JUDGMENT OF THE AM-ITE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J„ NOT PARTICIPATING.