# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01810-COA

SUZANN (SAVAGE) DAVIS                                                APPELLANT

v.

CHARLES GREGORY DAVIS                                               APPELLEE

DATE OF JUDGMENT:               10/12/2015
TRIAL JUDGE:                    HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:      DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        JERRY WESLEY HISAW
                                M.W. ZUMMACH
ATTORNEYS FOR APPELLEE:         A.E. (RUSTY) HARLOW JR.
                                DALANEY LEE MECHAM
                                KATHI CRESTMAN WILSON
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        MODIFIED APPELLEE'S CHILD-SUPPORT
                                OBLIGATION
DISPOSITION:                    AFFIRMED: 01/24/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

   **FAIR, J., FOR THE COURT:**

¶1.     Suzann and Greg Davis were divorced on June 10, 2011, on the ground of irreconcilable differences. They entered into a property, child-support, and child-custody agreement, with Suzann retaining physical custody of all three children. Suzann did not request Greg pay child support. The judgment was later modified by agreement on November 14, 2012, and July 16, 2013, after Suzann moved from Southaven, Mississippi, to South Carolina. Both judgments were consent orders approved by the chancellor.

¶2.     In the 2012 judgment, both parties agreed that Greg would pay $1,850 a month in

child support. The 2013 judgment awarded custody of Greg and Suzann's middle child to Greg, with the other two children remaining with Suzann. Visitation was modified and set out in detail. Monthly child support payable from Greg to Suzann was set at $1,000 per month, to increase automatically to $1,750 should the middle child move in with her mother and become enrolled as a full-time student (which did not occur). Specifically included in the order was their agreement that "[t]he payment of said child support shall constitute [Greg's] only obligation for support of the children to [Suzann]." The children's medical expenses – not paid by insurance and maintained by Greg – were to continue to be Greg's obligation, but any expenses not covered by insurance because they were "out of network" would be shared equally. Greg would refinance or sell the former marital home, to be quitclaimed to him by Suzann, within ninety days.

¶3. In 2014, Greg was convicted of criminal charges of making a false representation with the intent to defraud the government and embezzlement. A couple of weeks later, Suzann filed for further modification of physical custody and for contempt on Greg's part for missing required payments, including monthly alimony payments, which he had not paid for a year. Greg answered and sought modification of child support based on the expected emancipation of the oldest child or, in the alternative, based on the fact that she refused to have any relationship with him.

¶4. On October 12, 2015, the chancellor entered an order denying all relief sought by Suzann. The chancellor found that a $30,000 payment made by Greg to Suzann right after

2

the original divorce was entered had satisfied the $27,600 due for unpaid monthly lump-sum alimony payments of $2,300 for the twelve months prior to entry of the order. The remaining sum of $2,400 would reduce the total balance due, but not take the place of the upcoming payment (the original divorce property settlement contained provision for payment of $313,200 as lump-sum alimony payable in installments of $2,300 per month). The order recited that any future payments to Suzann not otherwise provided for, such as medical and/or college expenses, would be credited to the end of the lump-sum alimony term. Monthly payment of $2,300 remained an obligation of Greg. "For clarification purposes" the chancellor specifically found that Greg was not relieved of half the children's college and medical expenses.

¶5. In recalculating Greg's payments under Mississippi Code Annotated section 43-19-101 (Rev. 2015), the chancellor found that his child-support obligation for the two children living with Suzann was $1,196 a month – twenty percent of Greg's monthly income. The chancellor then ordered Suzann to pay support for her child still living with Greg in the amount of $632 – fourteen percent of her monthly income. Offsetting the payments, Greg's obligation for child support was reduced to $564 per month. Finally, it was provided that child support would be modified upon the oldest child becoming emancipated.

¶6. From that order and opinion Suzann appeals, asserting that the chancellor erred: (1) in modifying support, there having been no material change in Greg's circumstances since child support was reviewed and included in the agreed modification judgment of July 2013;

3

and (2) in failing to order that Greg pay attorney's fees and expenses for his contempt.

## STANDARD OF REVIEW

¶7. The standard of review in domestic-relations cases is limited. *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). A chancellor's factual findings will not be disturbed unless manifestly wrong or clearly erroneous, or an erroneous legal standard was applied. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011). As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). Questions of law, however, are reviewed de novo. *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011).

## DISCUSSION

### 1. Reduction of Support

¶8. The Mississippi Supreme Court has stated the requirements for modifying a child-support agreement: "[T]he burden of proof that must be met by the party seeking a financial modification is to show a material change of circumstances of one or more of the interested parties, whether it be the father, mother, or the child(ren) . . . ." *Wallace v. Bond*, 745 So. 2d 844, 848 (¶18) (Miss. 1999) (citing *McEachern v. McEachern*, 605 So. 2d 809, 813 (Miss. 1992)). The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement. *Corkern v. Corkern*, 58 So. 3d 1229, 1232 (¶13) (Miss. Ct. App. 2011). This burden is not met by a showing of reduced income

4

if that income was voluntarily reduced. *Ballard v. Ballard*, 843 So. 2d 76, 79 (¶8) (Miss. Ct. App. 2003) (citing *Lahmann v. Hallman*, 722 So. 2d 614, 622 (¶28) (Miss. 1998)).

¶9. Suzann argues that the chancellor erred in lowering Greg's child support. She relies heavily on the fact that Greg's income and expenses at the time the chancellor ruled were the exact amounts he set out in his Uniform Chancery Court Rule 8.05 financial statement at the time of the July 2013 modification order.

¶10. The child support approved in 2013, at the request of both parties, was $1,000 – an amount lower than provided by the section 43-19-101 guidelines. So, in actuality, the chancellor *increased* Greg's child-support obligation by $196 (to conform with statutory guidelines), but that figure was offset by the chancellor's decision to order Suzann to pay Greg child support for their one child living with Greg. When parents are given custody of separate children, a chancellor may require the parent with the higher income to pay only the difference in the child support that each custodial parent owes to the other. *Reid v. Reid*, 998 So. 2d 1032, 1035 (¶¶17-18) (Miss. Ct. App. 2008).

¶11. The chancellor found Greg's criminal convictions in 2014 to be a substantial and material change in circumstances:

> [At the time of the 2013 order, Greg's] only income was from his state retirement . . . [and he agreed] to pay more child support than just what it would have figured based on his retirement income because he did have a couple of jobs lined up that he was confident he was going to get. So there has been a substantial and material change in circumstances because[] he, since then, has become a convicted felon; he does not have that income.

¶12. As shown in the record, Greg testified that he was a convicted felon and was having

5

trouble finding employment. The chancellor based her finding on the fact that Greg only agreed to pay $1,000 a month because he thought he would have other income besides his state retirement. After review, we find no abuse of discretion in the chancellor's modification of child support under section 43-19-101.

¶13. Suzann also argues that the chancellor erred in including lump-sum alimony as part of her income when calculating her child-support obligation, because lump-sum alimony is not the type of alimony contemplated in the statute.[1] She points to *Neville v. Neville*, 734 So. 2d 352 (Miss. Ct. App. 1999), and *Dickerson v. Dickerson*, 34 So. 3d 637 (Miss. Ct. App. 2010), to support her argument. In *Neville*, this Court held that lump-sum alimony payable in installments is not "'alimony' necessarily includable" when calculating a parent's adjusted gross income. *Neville*, 734 So. 3d at 359 (¶31). In *Dickerson*, this Court simply detailed the connection between lump-sum alimony and the division of property. *Dickerson*, 34 So. 3d at 645 (¶32). Neither of these cases prohibits a chancellor from considering lump-sum alimony as income under section 43-19-101(3)(a). Thus, we find that a chancellor retains the discretion to classify lump-sum alimony as income when calculating child support. We find no abuse of discretion in the present case.

## 2. Contempt and Attorney's Fees for Failure to Pay Alimony

¶14. Civil contempt is a vehicle used to enforce or coerce obedience to a court's order.

---

[1] Section 43-19-101(3)(a) provides that alimony is a potential source of income that may be considered when determining a parent's adjusted gross income.

*Lahmann*, 722 So. 2d at 620 (¶19). Contempt matters are committed to the substantial discretion of the chancellor. *Id*. (citing *Shelton v. Shelton*, 653 So. 2d 283, 286 (Miss. 1995)). A case for contempt is based on prima facie evidence of failure to comply with a court order. *Newell v. Hinton*, 556 So. 2d 1037, 1039 (Miss. 1990)*; McCardle v. McCardle*, 862 So. 2d 1290, 1293 (¶11) (Miss. Ct. App. 2004).

¶15. Greg had paid $30,000 to Suzann when he sold their former marital home, which he had been awarded in the divorce. The chancellor found that payment sufficient to cover all the unpaid alimony. But she cautioned that any future lump-sum payments made to Suzann would not negate his obligation on the front end. The chancellor also warned Greg that he was required to make his monthly alimony payments on time.

¶16. The chancellor found that Greg was never in default because he had tendered a payment to Suzann greater than the amount owed at the time of the hearing. We find the chancellor was within her discretion to deny Suzann's request for contempt.

## CONCLUSION

¶17. We find no error in the chancellor's modification of child support or denial of Suzann's petition. Thus, we affirm the judgment of the chancellor.

¶18. **THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE AND WILSON, JJ., CONCUR. CARLTON, GREENLEE AND WESTBROOKS, JJ., NOT PARTICIPATING.**