493 So.2d 927 (1986)
Jean Ann Smith EAST
v.
A.L. EAST, III.
No. 55514.
Supreme Court of Mississippi.
August 13, 1986.
*928 Marjorie A. O'Connell, Steven D. Kittrell, Washington, D.C., Hugh C. Montgomery, Magruder, Montgomery, Brocato & Hosemann, Jackson, for appellant.
John H. Price, Jr., McKinley W. Deaver, Thomas, Price, Alston, Jones & Davis, Jackson, for appellee.
Before ROY NOBLE LEE and HAWKINS, P.JJ., and SULLIVAN, J.
HAWKINS, Presiding Justice, for the Court:
Jean Ann East appeals from a decree of the chancery court of the First Judicial District of Hinds County reducing the monthly payments her former husband A.L. East obligated himself to make in their property settlement agreement, incorporated in their decree for divorce on irreconciliable differences, and also cancelling the employment contract between Mrs. East and the corporation in which Mr. East is the sole, or majority stockholder.
We find the agreement entered into between Mr. and Mrs. East not subject to modification. We further find the chancellor had no authority to settle any dispute between Mrs. East and the corporation without making it a party to the action, and reverse and render.

FACTS
A.L. East, III, and Jean Ann Smith East married in 1950. He became a successful businessman in Jackson. In October, 1977, they separated. On March 28, 1979, there was a final decree of divorce between them on the ground of irreconcilable differences. On February 21, 1979, when each was represented by legal counsel, they executed an agreement entitled "Alimony and Property Settlement Agreement."
Pertinent portions of this agreement state:
WHEREAS, the parties hereto desire to define their respective obligations to each other, to enter into an Agreement under which their respective financial and property rights, alimony, and all other respective rights, remedies, privileges and obligations to each other, arising out of the marriage relation, or otherwise, shall be fully prescribed and bounded thereby; and
WHEREAS, the parties hereto have been fully, separately and independently apprised and advised of their respective *929 legal rights, remedies, privileges, and obligations arising out of the marriage relation, or otherwise, by counsel of their own choice and selection, and each having, in addition thereto, made independent inquiry and investigation with respect to all of the same, and each having been fully informed of the other's assets, property, holdings, income and prospects; and
WHEREAS, the parties hereto each warrant and represent to the other that they, and each of them, fully understand all of the terms, covenants, conditions, provisions, and obligations encumbered upon each of them by virtue of this Agreement to be performed or contemplated by each of them hereto, and each believes the same to be fair, just, reasonable and to his respective individual best interest.
* * * * * *
That, as alimony and as further consideration for the settlement of the claim of Wife to Husband's properties, Husband agrees to pay unto Wife the sum of Five Thousand and NO/100 Dollars, ($5,000.00), per month, payable on the fourth day of each and every month hereafter, said payment not to terminate upon the death of Husband, but shall constitute a charge against his Estate until the death of Wife, irrespective of her possible remarriage. It is the full intention of Husband that Wife shall receive as alimony and as a property settlement from him or his Estate the sum of Five Thousand and NO/100 Dollars, ($5,000.00), for each and every month hereafter until her death. Wife understands and agrees the aforesaid monthly payment of $5,000.00 shall be the only claim she shall have against the estate of the Husband and that by her acceptance thereof and agreement hereto Wife expressly waives any and all further claims to Husband's Estate.
That incident to the further support of Wife, she shall be granted an employment contract with East Ford, Inc., for public relations and other services to be performed by Wife, whereupon her salary shall be One Thousand and NO/100 Dollars ($1,000.00), per month, and Wife shall remain on all profit sharing and/or insurance benefit plants for medical, life or other insurance available to other employees, and all of the premiums therefor shall be paid by East Ford, Inc.; ... That the obligations of East Ford, Inc. shall be guaranteed by Husband by his signature to this Agreement, and in the event of any sale of said dealership or any change of the ownership thereof, this shall be a contractual agreement between East Ford, Inc. and Wife, and same shall be fully guaranteed as to terms and performance by Husband personally. That upon remarriage of Wife, the said vehicle which she is then operating shall become her property and the agreements contained in this paragraph shall thereupon cease, including the right to payment of the sum of One Thousand and NO/100 Dollars, ($1,000.00), per month, ...
* * * * * *
That Husband, realizing the effects of inflation on the purchasing power of the aforesaid salary agreement, agrees that after two (2) years from the date of the first payment under this salary agreement, that the salary shall be raised at the rate of three per cent (3%) per annum. Wife understands and agrees that her annual income from East Ford, Inc., shall be as follows: First Year  $12,000 per year; Second Year  $12,000 per year; Third Year  $12,360 per year; Fourth Year  $12,730.08 per year; Fifth Year  $13,112.72 per year, etc... ., said salary being paid monthly. That said raise in salary is to continue during the period of this Agreement, and shall apply only to the salary agreement with East Ford, Inc.
* * * * * *
Both the legal and practical effects of this Agreement and each and every aspect of the financial status of the parties have been fully explained to both parties by their respective counsel, and they *930 both acknowledge that it is a fair Agreement and that it is not the result of any fraud, duress, or undue influence exercised by either party upon the other or by any other person or persons upon either.
* * * * * *
This Agreement shall not be invalidated or otherwise affected by reconciliation between the parties hereto, or a resumption of marital relations between them unless said reconciliation or said resumption be documented by a written statement, executed and acknowledged by the parties, with respect to said reconciliation and resumption, setting forth that they are cancelling this Agreement.
* * * * * *
... And the parties agree, stipulate and consent that this Agreement may be incorporated into any Decree of Divorce. entered in the action pending in the First Judicial District of Hinds County, Mississippi, with prior consent of said Court.[1]
* * * * * *
It is the specific intent of both parties that this Agreement shall be binding on ourselves, our heirs, executors, administrators, and assigns. [Emphasis added]
Vol. I., pp. 6-12.
The agreement was attached to and incorporated as Exhibit A in a divorce decree, and the parties ordered to abide by its terms.
On August 9, 1982, East filed a complaint for modification of the decree, alleging a substantial change in their financial condition, his for the worse, and hers for the better.
The chancery court overruled a motion to dismiss under Rule 12(b) of the Mississippi Rules of Civil Procedure on December 10, 1982. Mrs. East answered the complaint, and following discovery the matter came on for hearing on July 28, 1983.
On August 26, 1983, the chancellor rendered an opinion that contrary to defense counsel's argument, the court was of the opinion it had the authority to modify the final decree and intended to do so.
The court then ruled that East's financial condition had deteriorated so much that it would be extremely difficult if not impossible for him to continue the $5,000 monthly payments. He accordingly reduced the payments to $4,000 per month.
As to the corporate agreement, the chancellor found Mrs. East had moved to New Orleans and was no longer of any benefit to East Ford, Inc., and this agreement was terminated. A final judgment was entered in accord with the chancellor's opinion. Costs were assessed to Mrs. East, and she has appealed.

LAW
It was clearly the intent of these parties, each represented by eminent legal counsel, to affix unalterably their mutual responsibilities for the remainder of their lives. Moreover, their agreement was approved by the chancellor and made a part of the divorce decree.
It was the obvious intent of the parties to create a non-modifiable agreement, and of the chancery court to approve and confirm it as part of a solemn court decree. The parties and the chancery judge intended to create a non-modifiable contract and court judgment.
If we hold this agreement solemnized by court decree could be modified by subsequent change in circumstances of the parties, then we must also say it is impossible to draft an agreement to pay the wife a sum certain until she dies which cannot be changed, up or down.
This case presents a troublesome question. Parties divorce, and as part of the decree the husband obligates himself to make future payments to his wife. Subsequent events make one or the other unhappy with the trade, and a petition is filed for modification of the final decree.
In pertinent part Miss. Code Ann. § 93-5-23 states:

*931 § 93-5-23. Custody of children; alimony.
When a divorce shall be decreed from the bond of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders ... touching the maintenance and alimony of the wife or the husband, or any allowance to be made to her or him, ... The court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require... .
We have consistently held that periodic (or "continuing") alimony is subject to change by the court. Gresham v. Gresham, 198 Miss. 43, 21 So.2d 414 (1945); East v. Collins, 194 Miss. 281, 12 So.2d 133, 145 A.L.R. 517 (1943); Lee v. Lee, 182 Miss. 684, 181 So. 912 (1938).
It is also true that the husband's obligation to pay periodic alimony ceases upon his wife's remarriage or his death. Wray v. Wray, 394 So.2d 1341 (Miss. 1981); Smith v. Smith, 349 So.2d 529 (Miss. 1977); Vaughan v. Vaughan, 226 Miss. 153, 83 So.2d 821 (1955); East v. Collins, supra; and Sides v. Pittman, 167 Miss. 751, 150 So. 211 (1933). The parties cannot by contract deprive, and it is doubtful if any court has the authority to deprive itself of the future authority to modify ordinary periodic alimony, or make it continue beyond the remarriage of the wife or the death of the husband. Taylor v. Taylor, 392 So.2d 1145 (Miss. 1981); Stone v. Stone, 385 So.2d 610 (Miss. 1980); McKee v. McKee, 382 So.2d 287 (Miss. 1980); Hughes v. Hughes, 221 Miss. 264, 72 So.2d 677 (1954).[2]
On the other hand we have historically recognized that alimony awarded in a lump sum, or in gross constitutes a fixed liability of the husband and his estate and cannot be modified. Butler v. Hinson, 386 So.2d 716 (Miss. 1980); Wray v. Wray, supra; Schaffer v. Schaffer, 209 Miss. 220, 46 So.2d 443 (1950); Robinson v. Robinson, 112 Miss. 224, 72 So. 923 (1911); Guess v. Smith, 100 Miss. 457, 56 So. 166 (1911); and, so long as the decree is unambiguous that the alimony is in lump sum, or in gross, it can provide for payment in fixed, periodic installments. See: McKee v. McKee, 418 So.2d 764 (Miss. 1982); Wray v. Wray, supra; Butler v. Hinson, supra; Hopkins v. Hopkins, 174 Miss. 643, 165 So. 414 (1936).
A divorce decree may embody periodic as well as lump sum alimony. See: Schilling v. Schilling, 452 So.2d 834 (Miss. 1984); Bush v. Bush, 451 So.2d 779 (Miss. 1984).
Lump sum alimony in a decree may very well have some of the attributes of a property settlement. It may be given to a wife who has by her efforts in her husband's behalf enabled him to accumulate considerable wealth, and even though she might not be entitled to any periodic alimony. See: Reeves v. Reeves, 410 So.2d 1300 (Miss. 1982); Clark v. Clark, 293 So.2d 447 (Miss. 1974). It may be awarded to a wife who over the years has assisted her husband in accumulating considerable property by doing her part as a housewife. Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973).
We have also historically recognized that parties may upon dissolution of their marriage have a property settlement incorporated in the divorce decree, and such property settlement is not subject to modification. A true and genuine property settlement agreement is no different from any *932 other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character. In re Estate of Kennington, 204 So.2d 444 (Miss. 1967).
In 1976 our Legislature authorized a divorce on the grounds of irreconcilable differences. Miss. Code Ann. § 93-5-2 (1976 Supp.). This statute requires that the parties make a settlement of their property rights, and the agreement may be incorporated in the decree. This statute states in part:
§ 93-5-2. Divorce on grounds of irreconcilable differences.
... No divorce shall be granted on the ground of irreconcilable differences unless the court shall find in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties. The agreement may be incorporated in the decree, and such decree may be modified as other decrees for divorce.... [Emphasis added]
Mr. and Mrs. East were divorced under the provisions of this statute.
Was the $5,000 monthly payment merely periodic alimony, or a form of lump sum alimony payable in fixed immutable installments until her death, or a property settlement?
This is not the first case where a divorce decree has presented this thorny question. See: Taylor v. Taylor, supra; McKee v. McKee, supra. Butler v. Hinson, supra; Hopkins v. Hopkins, supra. Nor are we the only state which has had to wrestle with such question. Some good samples from other jurisdictions are: Wolfe v. Wolfe, 46 Ohio St.2d 399, 350 N.E.2d 413 (1976); Kinne v. Kinne, 510 P.2d 814, 82 Wash.2d 360 (1973); Lytle v. Lytle, 99 N.W.2d 377, 357 Mich. 676 (1959); Couzens v. Couzens, 140 Mich. App. 423, 364 N.W.2d 340 (1985). In Kinne, the Supreme Court of Washington reached the conclusion that there is no sound reason for allowing a husband to contract away the duty to support his wife and children under the guise of a property settlement agreement, but the reverse was not true, and a husband could contract to pay his wife an agreed sum in spite of changing circumstances. Or, put another way, the court held that a husband has an obligation which cannot be contracted away to see that his wife and children are supported within the limits of his capabilities. Couzens held that an agreement purely for periodic alimony, providing that it could not be modified by the parties, and incorporated in a divorce decree did not deprive the court at a later date of the power to modify because of the changed conditions of the parties.
While it is true in modern society that wives as well as husbands are often gainfully employed, and in many divorce cases the need for alimony either does not exist or is not as crucial to sustenance as it once was, we are a long ways in this State from abandoning the conviction that there are a substantial number of divorce cases wherein the wives are entitled to alimony. In such cases this State, society, has a vital interest in protecting the divorced wife and the couple's offspring. Indeed, it is this vital public interest which removes from a divorce decree the finality of any other judgment.
We are not called upon in this case, however, to go as far as the Supreme Court of Washington, or the Michigan Court of Appeals. We find that the agreement between Mr. and Mrs. East, while using the term alimony, was in fact a property settlement or lump sum alimony, payable in fixed, unalterable installments. When the parties specifically provided in their agreement as part and parcel of their property settlement that the payments would not terminate upon either his death or her remarriage, and she could never ask that any of these payments be increased, which was approved by the court in the divorce decree, this removed any claim that it was no more than periodic alimony. Mr. and Mrs. East are bound by its terms and provisions. This accords with our previous *933 decisions. See: McKee v. McKee, supra; Taylor v. Taylor, supra.
As to the obligation of East Ford, Inc., to pay Mrs. East a certain sum, the chancellor was in error in reaching any decision on this corporation's obligation because it was never made a party to the suit.
REVERSED AND RENDERED.
WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., dissents.
NOTES
[1] The above is exactly how it appears in the record.
[2] The reason for this lack of power is encompassed in the meaning we have placed upon "periodic alimony." "Alimony" thus defined comes from the duty of the husband to support his wife. Gresham v. Gresham, 198 Miss. 43, 21 So.2d 414 (1945); Felder v. Felder's Estate, 195 Miss. 326, 13 So.2d 823 (1943). If, as we have consistently stated such alimony is imposed on a husband to support his former wife in the manner to which she has been accustomed to the extent of his ability to pay, Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955), then it is nonsensical to state in the divorce decree that the alimony payments cannot be changed, regardless of future circumstances of the parties.

The problem arises when one judge thinks alimony means "X," another thinks it means "Y," and an appellate court thinks it means "XY."