# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00331-COA

**MARK EDWARD CAMPBELL**                                        **APPELLANT**

**v.**

**MISTY MCDANIEL CAMPBELL**                                        **APPELLEE**

DATE OF JUDGMENT:                     02/01/2017
TRIAL JUDGE:                          HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:            GRENADA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:              CHARLES E. WINFIELD
                                      ASHLYN BROWN MATTHEWS
ATTORNEY FOR APPELLEE:                A. E. (RUSTY) HARLOW JR.
NATURE OF THE CASE:                   CIVIL - DOMESTIC RELATIONS
DISPOSITION:                          REVERSED, RENDERED IN PART, AND
                                      REMANDED IN PART: 06/19/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., WILSON AND TINDELL, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.    Mark Campbell appeals the Grenada County Chancery Court's judgment increasing his monthly child-support payments and awarding attorney's fees to his ex-wife, Misty Campbell. Upon review, we reverse the chancellor's upward modification of Mark's child-support obligation and render a judgment restoring the amount agreed upon by the parties in their child-custody and property-settlement agreement. We likewise reverse the chancellor's award of attorney's fees to Misty, but we remand the issue for further proceedings consistent with this opinion.

## FACTS

¶2.    Mark and Misty married on July 25, 1992, and they separated on November 29, 2008. The parties had four children during their marriage. At the time the parties filed for divorce, their children were ages 13, 11, 9, and 6. The parties consented to an irreconcilable-differences divorce and submitted to the chancellor a written agreement on the issues of child custody and property settlement. The agreement provided that the parties would share joint legal custody of their children and that Misty would retain physical custody while Mark received reasonable visitation rights. In addition, the agreement acknowledged that Mark's current monthly gross income amounted to $66,666.67 and that he would pay Misty "child support [in] the sum of $1,250 per month per child" until the children reached "the age of 21, marr[ied], join[ed] the armed forces[,] or [were] otherwise fully emancipated according to law, whichever occur[red] first."[1] On September 20, 2010, the chancellor entered a final divorce judgment that granted the parties an irreconcilable-differences divorce. The chancellor's judgment adopted and incorporated by reference the parties' child-custody and property-settlement agreement.

¶3.    On March 18, 2016, Mark filed a petition for contempt and for modification of the divorce decree. Mark alleged that his oldest son had become emancipated, which should relieve him of his child-support obligation to that son.[2] In addition, Mark claimed that his

---

[1] The parties' agreement contained other provisions regarding Mark's continued financial support of the minor children. With regard to Misty, the agreement stated that Mark would pay her $16,000 as a property-settlement payment and $576,000 in lump-sum alimony, to be paid in ninety-six installments of $6,000 a month until May 15, 2018.

[2] The record reflects the chancellor later found the parties' oldest son became emancipated upon reaching his twenty-first birthday.

income had dramatically decreased, which constituted a material change of circumstances and prevented him from paying his current child-support obligations. Mark therefore asked the chancellor to reduce his child-support payments in accordance with Mississippi's child-support guidelines. Finally, after asserting that, among other things, Misty had abused or neglected the parties' three minor children and intentionally interfered with Mark's relationship and parenting time with the children, Mark requested that the chancellor hold Misty in contempt and award him physical custody of the minor children.

¶4. On April 11, 2016, Misty answered Mark's petition and filed a counterpetition for contempt and modification of the divorce decree. Misty alleged that Mark had failed to comply with his current child-support and alimony obligations and that a material change in circumstances had occurred that necessitated an increase in future child-support payments. The following month, on May 31, 2016, Misty filed a temporary motion for emergency relief. In the temporary motion, Misty asserted that one of the minor children needed braces and that Mark was still behind on his child-support and alimony payments. Misty therefore asked the chancellor to order Mark to pay the orthodontic fees and the arrearages on his child-support and alimony obligations.

¶5. The chancellor held an October 5, 2016 hearing on the parties' various petitions and motions. At the hearing, the parties introduced their financial statements and Mark's tax returns for 2010 through 2012. Although the parties had previously agreed that Mark's monthly gross income amounted to $66,666.67, Mark submitted an affidavit stating that his average monthly income had now decreased to $22,363.34. On October 14, 2016, the

3

chancellor entered an order nunc pro tunc as of October 5, 2016, that addressed both Mark's petition and Misty's counterpetition for contempt and modification of the divorce decree. Based on Mark's various allegations against Misty, the chancellor appointed a guardian ad litem (GAL) for the minor children and ordered Mark to pay a $2,500 retainer fee to the GAL within thirty days of the order's entry. The chancellor also bifurcated the matter to first hear the parties' contempt issues and to reserve all issues regarding modification until the completion of the GAL's report.

¶6. After finding that Mark failed to prove his contempt allegations against Misty, the chancellor denied Mark's request to hold Misty in contempt. The chancellor next found, however, that Mark had failed to timely pay child support, alimony, and other sums to Misty as directed by the court's previous order. The chancellor therefore held Mark in willful contempt and ordered him to pay Misty $80,287.38 ($42,485 for unpaid child support and alimony; $27,057.38 for unpaid medical and other support; and $10,745 for attorney's fees).

¶7. On November 7, 2016, Misty filed another petition for citation of contempt and alleged that Mark had failed to comply with the chancellor's October 14, 2016 order. Specifically, Misty argued that Mark had failed to pay the sums owed to her under the chancellor's previous order. The same month, on November 30, 2016, Mark filed another petition to modify child support. Mark asserted that, under the terms of the parties' child-support agreement, his second oldest son's enlistment in the United States Army relieved him of his child-support obligation toward that son.

¶8. The chancellor held a December 21, 2016 hearing on Mark's March 18, 2016 petition

4

for contempt and modification of the divorce decree, Misty's November 7, 2016 contempt petition, and Mark's November 30, 2016 petition for modification. At the start of the hearing, Mark announced he no longer intended to pursue his claims of abuse and neglect against Misty or his request for physical custody of the parties' minor children. The hearing therefore proceeded only on the issues of Mark's request for modification of his child-support payments and Misty's contempt petition. With regard to Mark's request for modification, Misty asked the chancellor to incorporate the financial documents introduced into evidence at the prior hearing on October 5, 2016. Mark neither objected to Misty's request nor introduced any updated information regarding his income and finances.

¶9. On January 27, 2017, the chancellor entered an order acknowledging that Mark had requested the dismissal of his March 18, 2016 petition. The chancellor further found that the terms of the parties' child-custody and property-settlement agreement required termination of Mark's child-support obligation to the parties' second oldest son since the child had enlisted in the Army. The chancellor stated that he would recalculate and set child support for the two remaining minor children the following month.

¶10. In his subsequent order entered February 9, 2017, the chancellor found as follows: (1) the emancipation of the parties' second oldest son was unforeseen, constituted a material change in circumstances, and justified a modification of the divorce decree; (2) Mark presented no credible evidence to show his income reduction was unforeseen or involuntary; (3) "it would be inequitable[] and to the detriment of [the parties'] other children[] to allow a voluntary reduction of income to reduce their support"; (4) Mark's current gross monthly

5

income amounted to $67,000, and after deducting forty percent in allowable taxes, his adjusted monthly income amounted to $40,200; (5) clear and convincing evidence showed that Mark, without justification, willfully declined to follow the chancellor's previous order to pay $2,500 for the GAL's fees; (6) Mark's allegations against Misty for abuse and neglect of the minor children necessitated the GAL's appointment, but Mark failed to pursue his claim; and (7) Mark's allegations of abuse and neglect lacked substantial evidentiary foundation and were brought "for the purpose of harassment and delay, requiring [Misty] to expend unnecessary cost and fees for which she should be reimbursed."

¶11.    Based on his findings, the chancellor increased Mark's child-support obligation to comply with the statutory guidelines and ordered Mark to pay Misty $8,050 a month (or twenty percent of his monthly adjusted gross income). The chancellor stated, however, that the parties' other agreed-upon provisions for child support and maintenance would remain unmodified.[3] The chancellor next held Mark in contempt for failing to comply with the previous order to pay $2,500 for the GAL's fees. Finally, the chancellor awarded Misty $4,141.97 in attorney's fees incurred defending against Mark's allegations of abuse and neglect.[4]

---

[3] The parties' agreement also obligated Mark to do the following: (1) maintain health and dental insurance for the minor children and pay all related uncovered medical expenses; (2) maintain at least a $750,000 life-insurance policy for the children; (3) pay "all mandatory costs, fees[,] and expenses associated with providing each of the children . . . a private[-] school education through high school"; (4) pay all college "expenses associated with providing each of the minor children . . . a college education for four years from the date of graduation from high school"; and (5) "pay for the lodging expenses for a seven[-]day period associated with a vacation for [Misty] and the minor children" each year.

[4] *See* Miss. Code Ann. § 93-5-23 (Rev. 2013).

¶12.    Aggrieved by the chancellor's upward modification of his child-support payments and award of attorney's fees to Misty, Mark appeals.

## STANDARD OF REVIEW

¶13.    Where substantial evidence supports a chancellor's findings of fact, this Court will affirm the "chancellor's findings unless the chancellor abused his discretion, was manifestly wrong[] or clearly erroneous, or applied an erroneous legal standard." *Strait v. Lorenz*, 155 So. 3d 197, 203 (¶19) (Miss. Ct. App. 2015).  However, we review questions of law de novo. *Id.*

## DISCUSSION

### I.    Child Support

¶14.    Mark challenges the chancellor's upward modification of his monthly child-support payment from the agreed-upon $1,250 per child to $8,050.  "A chancellor may modify a child-support award if there has been a substantial or material change in the circumstances of one or more of the interested parties:  the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." *In re C.T.*, 228 So. 3d 311, 316 (¶12) (Miss. Ct. App. 2017) (internal quotation marks omitted).  "The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement." *Davis v. Davis*, 222 So. 3d 1101, 1104 (¶8) (Miss. Ct. App. 2017) (citing *Corkern v. Corkern*, 58 So. 3d 1229, 1232 (¶13) (Miss. Ct. App. 2011)).

¶15.    The chancellor found the parties' second oldest son became emancipated following his enlistment in the Army.  According to the chancellor, this emancipation was unforeseen

7

and constituted a substantial and material change in circumstances that justified a modification of Mark's child-support obligation. However, the parties' child-custody and property-settlement agreement, which the chancellor adopted and incorporated by reference into the final divorce judgment, clearly contemplated such an event. The agreement explicitly stated that Mark would pay Misty "child support [in] the sum of $1,250 per month per child" until the children reached "the age of 21, marr[ied], **join[ed] the armed forces**[,] or [were] otherwise fully emancipated according to law, whichever occur[red] first." (Emphasis added).

¶16. Because the parties discussed and provided for this exact situation when considering child support, we find the chancellor manifestly erred by concluding the second oldest son's decision constituted an unanticipated event that warranted modification of Mark's child-support obligation. We therefore reverse the portion of the chancellor's judgment modifying Mark's child-support obligation and render a judgment to restore the amount agreed upon by the parties in their child-custody and property-settlement agreement. On remand, Mark is entitled to a credit for any child support he has paid in excess of the amounts provided for in the parties' agreement.

## II. Attorney's Fees

¶17. Mark next challenges the chancellor's award of $4,141.97 in attorney's fees to Misty. After finding Mark's allegations of abuse and neglect against Misty lacked evidentiary support, the chancellor ordered Mark to pay the fees Misty incurred defending against the unsubstantiated claims. *See* Miss. Code Ann. § 93-5-23 (Rev. 2013). Mark asserts on

appeal, however, that Misty's attorney never separated the fees incurred defending against the abuse and neglect allegations from the fees incurred litigating other matters. Since the chancellor only ordered Mark to pay the attorney's fees related to the litigation of the abuse and neglect allegations, Mark argues the chancellor abused his discretion by failing to separate those fees from the "fees otherwise incurred in Misty's defense of Mark's request for decreased child support and pursuit of her own request for increased child support."

¶18. The decision to award attorney's fees is largely entrusted to a chancellor's sound discretion. *Evans v. Evans*, 75 So. 3d 1083, 1089 (¶22) (Miss. Ct. App. 2011) (citing *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)). After finding Mark's claims of abuse and neglect to be unsubstantiated, the chancellor was well within his authority to award Misty the attorney's fees she incurred defending against the allegations. *See* Miss. Code Ann. § 93-5-23. However, the chancellor never made a finding that Misty lacked the ability to pay her attorney's fees incurred litigating other matters. *See Ewing v. Ewing*, 203 So. 3d 707, 716 (¶33) (Miss. Ct. App. 2016) ("Generally, unless the party requesting attorney's fees can establish [an] inability to pay, such fees should not be awarded." (quoting *Bredemeier v. Jackson*, 689 So. 2d 770, 778 (Miss. 1997))). As a result, we find the chancellor abused his discretion by failing to separate the attorney's fees Misty incurred defending against Mark's allegations of abuse and neglect from those fees incurred litigating other matters. We therefore reverse this portion of the chancellor's judgment and remand the issue so the chancellor may determine which attorney's fees Misty incurred defending against Mark's unsubstantiated allegations.

**CONCLUSION**

¶19.    Because we find the emancipation of the parties' second oldest son failed to constitute an unanticipated event, we reverse the chancellor's upward modification of Mark's child-support obligation and render a judgment restoring Mark's monthly child-support payment to the amount agreed upon by the parties in their child-custody and property-settlement agreement. We further reverse the chancellor's award of attorney's fees to Misty and remand the issue so the chancellor can specifically determine which fees Misty incurred defending against Mark's allegations of abuse and neglect.

¶20.    **REVERSED, RENDERED IN PART, AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**