# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CT-00883-SCT

*KENNETH PEYTON BRYANT*

*v.*

*JENNIFER HART BRYANT*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                  07/29/2020
TRIAL JUDGE:                       HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:  DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      JERRY WESLEY HISAW
ATTORNEYS FOR APPELLEE:       CHARLES E. WINFIELD
                                   ASHLYN BROWN MATTHEWS
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                       AFFIRMED - 09/29/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The parties had obtained a divorce in the Chancery Court of DeSoto County in 2016. On June 3, 2020, Jennifer Bryant filed a motion in which she asked the chancellor, pursuant to Section 17 of the property settlement agreement, which was incorporated into the divorce decree, to determine which school the three minor children should attend:  Hernando or Lake Cormorant. The father, Kenneth Bryant, wanted the children to go to school at Lake Cormorant because his wife, Alicia Bryant, was a teacher there. The chancellor decided that it was in the children's best interest to go to school in the Hernando public school district.

¶2.     Kenneth Bryant appealed, and the Court of Appeals affirmed the chancellor's

decision. ***Bryant v. Bryant***, No. 2020-CA-00883-COA, 2021 WL 5802520, at \*4 (Miss. Ct. App. Dec. 7, 2021). The Court of Appeals determined that the language of the property settlement agreement authorized the chancellor to reevaluate the matter and that "[a] property settlement agreement cannot deprive the court of its authority to modify support and educational needs of a child." ***Id.***

¶3. We agree with the Court of Appeals. Therefore, we affirm.

## STATEMENT OF FACTS

¶4. The Court of Appeals related the facts as follows:

Jennifer and Kenneth were married from August 2, 2009, until their divorce (based on irreconcilable differences) on March 30, 2016. Three children were born during their marriage: the eldest child was born in 2011, and twins were born in 2014. The divorce decree incorporated a Property, Child Support, and Child Custody Agreement (PSA) that set forth stipulations as to all matters concerning the minor children.

The PSA provided that Jennifer and Kenneth agreed to share legal and physical custody of the children, and there was a specific provision regarding the children's education and where they could attend school. The PSA stipulated that if they could not agree about major decisions concerning the children, Kenneth had final decision-making authority. There was also a clause stating that the PSA could be submitted to the chancellor for "approval or disapproval."

Kenneth and Jennifer had previously amended the terms of the PSA. On July 26, 2016, Jennifer filed a petition for contempt alleging that Kenneth had incessantly harassed her and the family since the entry of the divorce decree and that he threatened to withhold the minor children from her if she did not meet his demands. Kenneth responded, alleging that Jennifer had not provided him with a copy of her drug test results as commanded in the divorce decree. Additionally, he alleged that Jennifer denied him the right to speak with the children when they were in her custody. On May 30, 2017, the parties entered into an "Agreed Order Modifying Visitation" altering the parties' weekly

2

periods of custody and limiting their means of communications to text messages and emails. This modification did not disturb the parties' joint legal custody or the terms of the children's private school and child care.

In 2020, when the actions giving rise to this appeal occurred, Kenneth and his wife Alicia, a teacher in Lake Cormorant, lived in Hernando, as did Jennifer and the children. Per the PSA, the eldest child had been enrolled in Magnolia Heights, a private school. The twins were to start kindergarten in the fall of 2020. A few months prior to this time, Kenneth informed Jennifer that he would be enrolling all the children in the Lake Cormorant public school system. In keeping with the PSA, Jennifer filed a motion requesting that the chancellor order the children to attend Hernando public schools.

*Bryant*, 2021 WL 5802520, at *1 (footnote omitted).

¶5.     On July 20, 2020, a hearing on the motion was held. At the hearing, Kenneth Bryant testified that he wanted the children to attend school at Lake Cormorant because that was where his current wife, Alicia Bryant, was working as a teacher. He testified also that he did not have any personal knowledge of Jennifer Bryant's financial situation. During the hearing, Kenneth Bryant maintained that his first choice for the school he wanted his children to attend was Magnolia Heights. Jennifer Bryant testified that "[Kenneth Bryant] said that he could not afford Magnolia Heights either" and that he was enrolling the children at Lake Cormorant. Also, she presented the state rankings of the schools, which showed that Hernando's schools were ranked significantly higher than Lake Cormorant's schools. Regarding the parties' ability to pay, the chancellor determined that there had been sufficient evidence to trigger the language in the property settlement agreement because the mother testified that the father "said he said he could not afford Magnolia Heights, either, which implies that she couldn't and he basically said he didn't think she could and so that's the

3

reason he wasn't even considering Magnolia. So I'm going to consider . . . it already being triggered."

¶6. After hearing all of the testimony, the chancellor decided that

> Quite honestly, both [parents] have some very valid points about each of your choices about the schools; however, the [c]ourt just feels like it's going to be in the children's best interest to go to school where they live, to go to school in Hernando. So I'm going to rule that the children get enrolled in Hernando school.

"At the request of Kenneth's attorney, the chancellor also ordered that if Kenneth is able to afford private school for all three children and if both parents decide that would be in the children's best interests, Kenneth would be solely responsible for all costs associated with them attending private school." *Bryant*, 2021 WL 5802520, at *2.

¶7. The father appealed, arguing that "the chancellor erred in ordering that his three minor children must attend school in the Hernando school district or, in the alternative, that he must pay for private school." *Id.* He "argue[d] that the chancellor's ruling to send all three children to Hernando elementary school contradicts the language in the PSA that gave him the final decision-making authority should he and Jennifer disagree on any major life decisions affecting the children." *Id.* at *3. The Court of Appeals determined that

> [t]he [property settlement agreement] clearly gave the chancellor the authority to weigh in on all matters covered therein—specifically where the children attended school. A property settlement agreement cannot deprive the court of its authority to modify support and educational needs of a child. The decision-making power afforded Kenneth in this instance cannot and does not usurp that of the chancellor.

*Id.* at *4. Presiding Judge Wilson authored a dissent, joined in part by Chief Judge Barnes,

saying that he would reverse the chancellor's decision because Kenneth Bryant was the final decision maker and "was entitled to decide where the children should attend school, and there was no legal basis for the chancellor to order the children to attend school in the Hernando school district." *Id.* at *5 (Wilson, P.J., dissenting).

¶8.     Kenneth Bryant filed a petition for writ of *certiorari*, which was granted by this Court. He argues that the decision of the Court of Appeals conflicts with precedent and that it "was made without addressing the threshold issue of whether there was any legal basis to differ from the Father's decision making that was specifically provided for in the parties' divorce decree." He challenges also the chancellor's order requiring him to pay all of the private school tuition if he wished for the children to attend Magnolia Heights. He claims that the Court of Appeals failed to address this issue and that the chancellor committed reversible error by entering the order because "there was insufficient proof either way of the parties' ability or inability to pay private school tuition."

**STANDARD OF REVIEW**

¶9.     We have held that "[w]hen this Court reviews a chancellor's decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (Miss. 2007) (citing *R.K. v. J.K.*, 946 So. 2d 764, 772 (Miss. 2007)). "However, a property settlement agreement is a contractual obligation." *Harris v. Harris*, 988 So. 2d 376, 378 (Miss. 2008) (citing *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986)). Questions of law, such as contract

5

interpretations, are reviewed *de novo*. *Id.* (citing *Warwick v. Gautier Util. Dist.*, 738 So. 2d 212, 215 (Miss. 1999)).

## DISCUSSION

¶10.    Two relevant parts of the property settlement agreement are before us: Section 11 and Section 17. Section 11 pertains to custody and visitation of the children and says that the parents "shall share joint legal and physical custody of the children[;] . . . however, in the event that the parties are unable to agree upon major life decisions affecting the child/children, the Father shall have the final decision making authority." Section 17 is titled "Private school/child care" and provides that

> Both the Mother and Father agree that the [eldest] minor child . . . is currently enrolled at Magnolia Heights School. Each party shall be responsible for one-half (1/2) of the costs of tuition and extra curricular costs for said minor child. Further, each party shall be responsible for uniforms and school lunches for the minor child while in their care.

> Both parties agree that when it is time for the twins to attend 5 year old kindergarten, if either party is financially unable to afford tuition for the said minor children, the Court will reevaluate this matter upon Motion of either party.

¶11.    Kenneth Bryant argues that the Court of Appeals' decision conflicts with precedent that allows a designated parent to choose which school his or her children will attend. *See Wildman v. Wildman*, 301 So. 3d 787, 803-04 (Miss. Ct. App. 2020) ("Mississippi statutory law and jurisprudence recognize that the chancellor may indeed allocate decision-making and duties to each parent sharing joint legal custody." (internal quotation marks omitted) (quoting *Taylor v. Timmons (In re C.T.)*, 228 So. 3d 311, 316 (Miss. Ct. App. 2017))). The father

6

asserts that "a chancellor has no independent authority to second-guess or override a parent's decision as to where a child should attend school." He asserts also that his "right to decide where his children attend school does not 'usurp' the chancellor's authority," because per the property settlement agreement "this decision belongs to Kenneth, not the chancellor."

¶12.    In his petition for writ of *certiorari*, the father relies on a United States Supreme Court case, ***Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary***, which held that parents have the right to "direct the upbringing and education of the children under their control." ***Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary***, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925). This Court has recognized also that

> [t]he Fifth and Fourteenth Amendments to the United States Constitution proscribe governmental interference with individual liberties such as a parent's right to determine his child's care, custody and management. *See **Santosky v. Kramer***, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599 (1982). However, this right is not absolute. *See **Wisconsin v. Yoder***, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (parental decisions may be curtailed by the State as in the best interest of the child).

***Martin v. Coop***, 693 So. 2d 912, 915 (Miss. 1997), *abrogated on other grounds by **Smith v. Martin***, 222 So. 3d 255 (Miss. 2017). We recognize that while parents have the right to make decisions regarding the care, custody, and control of their children, including decisions regarding education, these rights may be limited if the parents' decision is not in the child's best interest and "will jeopardize the health or safety of the child, or [will] have a potential

7

for significant social burdens."[1] *Yoder*, 406 U.S. at 234.

¶13.     Here, the chancellor was acting as the "superior guardian" of the children, and she made decisions in their best interest. *Mathews v. Williams (In re Conservatorship of Mathews)*, 633 So. 2d 1038, 1040 (Miss. 1994) (internal quotation marks omitted); *see also Hill v. Smith (In re Adoption of a Minor)*, 558 So. 2d 854, 857 (Miss. 1990) ("By our Constitution and ancient law, a court of equity is the superior guardian for all persons under a disability, and [it is] under a duty to make a searching inquiry on matters affecting their welfare."). "A fundamental purpose and major reason for the existence of a chancery court is to fulfill society's function of protecting children." *Miss. State Bar Ass'n v. Moyo*, 525 So. 2d 1289, 1293 (Miss. 1988). In *Union Chevrolet Co. v. Arrington*, 162 Miss. 816, 138 So. 593, 595 (1932) (emphasis added), we held:

> Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the Legislature to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court

_____

[1] *See also* **Dutkiewicz v. Dutkiewicz**, 957 A.2d 821, 833 (Conn. 2008) ("All of the cases in which the United States Supreme Court or this court, in applying federal constitutional standards, have concluded that the parental right to exercise care, custody and control over children was implicated, involved situations in which the state intervened and substituted its decision making for that of the parents. The result is that a parent's *decision* with respect to the care, custody and control of his or her child cannot be overridden by the state in the absence of a showing that the parent is unfit or that the parent's decision will jeopardize the health or safety of the child, or will have a potential to impose significant social burdens." (citing *Yoder*, 406 U.S. at 233-34)).

and of the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non composmentis. The court . . . in general will and must take all necessary steps to conserve and protect *the best interest of these wards* of the court. The court *will not and cannot permit the rights of an infant to be prejudiced by any waiver, or omission or neglect or design of a guardian*, or of any other person, so far as within the power of the court to prevent or correct. Grif. Chan. Prac. §§ 45, 360, 530, 533.

After the mother had filed her motion asking the chancellor to determine which school the children would attend, the chancellor had a duty as the superior guardian of the children to protect their best interest, notwithstanding the settlement agreement's Section 11 designation of the father as the final decision maker regarding major life decisions for the children, including educational choices. This Court said clearly in *Arrington* that "[t]he [chancery] court will not and cannot permit the rights of an infant to be prejudiced by any . . . design of a guardian[.]" *Id.* Thus, Section 11's provision cannot usurp, supplant, or compromise the chancellor's authority, because parents cannot design away a chancellor's power to function as the superior guardian of minor children. "The welfare of the children and their best interest is the primary objective of the law, and the courts must not accord to contractual arrangements such importance as to turn the inquiry away from that goal." *McManus v. Howard*, 569 So. 2d 1213, 1215-16 (Miss. 1990) (citing *Pace v. Owens*, 511 So. 2d 489, 490 (Miss. 1987)).

¶14. Additionally, in *Bell v Bell*, 572 So. 2d 841, 844-45 (Miss. 1990),[2] this Court

---

[2]*See also* *Lowrey v. Lowrey*, 919 So. 2d 1112, 1120 (Miss. Ct. App. 2005) ("This Court cannot say that the settlement agreement at issue is in the best interests of the children.

distinguished between provisions in settlement agreements that deal with property and

financial matters and those that deal with minor children:

> In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts. *See, e.g.*, **Osborne v. Bullins**, 549 So. 2d 1337, 1339 (Miss. 1989); **Morris v. Morris**, 541 So. 2d 1040 (Miss. 1989). Even so, we have held the parties may not by contract, court-approved or otherwise, deprive the court of authority to hear a plea for modification of periodic alimony. *See* **Austin v. Austin**, 557 So. 2d 509, 510 (Miss. 1990); **East v. East**, 493 So. 2d 927, 931 (Miss. 1986).

> Provisions for the custody and support of minor children are different. Children of divorcing parents are, in a very practical sense, wards of the court which is by law charged to regard their best interests. **Owens v. Huffman**, 481 So. 2d 231, 244 (Miss. 1985); **Tighe v. Moore**, 246 Miss. 649, 151 So. 2d 910, 917, *cert. denied*, 375 U.S. 921, 84 S. Ct. 265, 11 L. Ed. 2d 164 (1963). In the present context, the legislature has directed that, before approving an agreement regarding child custody or support, the court should satisfy itself that the provisions for the care and maintenance of the children "are adequate and sufficient[.]" Miss. Code Ann. § 93-5-2 (Supp. 1990)[.]

Here, Section 11 is a provision in a settlement agreement dealing with the custody of minor

children—not with property or with matters purely financial in nature—and it must be treated

differently than matters of property or finance.

¶15.    Kenneth Bryant argues also that the chancellor erred by overriding the property

settlement agreement without a showing of a material change in circumstances. He maintains

---

. . . Because the settlement agreement is not in the best interests of the children, it is not adequate or sufficient to meet the statutory standards of Mississippi Code Annotated § 93-5-2.").

that Jennifer Bryant had not alleged a material change in circumstances and that "a chancellor has no independent authority to second-guess or override a parent's decision as to where a child should attend school." But a material change in circumstances was not required in these circumstances because the property settlement agreement explicitly permitted the chancellor to address "this matter."

¶16. "This Court historically has recognized that a property settlement agreement 'is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.'" ***Wood v. Wood (In re Dissolution of Marriage of Wood)***, 35 So. 3d 507, 513 (Miss. 2010) (quoting ***Townsend v. Townsend***, 859 So. 2d 370, 376 (Miss. 2003)). This Court has held that

> Contract interpretation involves a three-step analysis. ***Epperson v. SOUTHBank***, 93 So. 3d 10, 16-17 (Miss. 2012); ***Harris*** [***v. Harris***] 988 So. 2d [376,] 378-79 [(Miss. 2008)]. "First, [this Court] must determine whether the contract is ambiguous, and if it is not, then it must be enforced as written." ***Epperson***, 93 So. 3d at 16. In this step, the Court analyzes the express wording of the contract and enforces the plain meaning where there is no ambiguity." ***Id.*** at 16-17. If the contract is deemed ambiguous, the Court applies the meaning more favorable to the nondrafting party. ***Id.*** at 17. Third, if the contract's meaning remains ambiguous, the Court will consider extrinsic evidence. ***Id.***

***McFarland v. McFarland***, 105 So. 3d 1111, 1119 (Miss. 2013) (fourth alteration in original). Section 17 of the property settlement agreement provides, in relevant part, that "if either party is financially unable to afford tuition for the said minor children, the [c]ourt will reevaluate this matter upon [m]otion of either party." The father interprets "this matter" to mean "the parties' respective responsibilities for the cost of private school tuition, childcare,

11

and extracurricular activities." This Court finds that "this matter" is, in this context, an ambiguous phrase that we interpret to apply to the children's education. Section 17 as a whole is focused on matters concerning the education of the children, not just the children's private school tuition. *See Epperson*, 93 So. 3d at 18 ("Particular words should not control; rather, the entire instrument should be examined." (internal quotation marks omitted) (quoting *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990))). Therefore, Section 17's provision that either party can file a motion for the court to reevaluate "this matter[,]" the filing party, as here, is asking the court to reconsider matters concerning the children's education. "The language of the [property settlement agreement] gave the chancellor the authority to reevaluate the matter upon the motion of either party[,]" and Jennifer Bryant properly filed a motion before the chancellor. *Bryant*, 2021 WL 5802520, at *4.

¶17.    "Decisions related to a guardianship lie largely within the sound discretion of the chancellor, as the ultimate guardian of wards of the court, and those decisions are reviewed for abuse of discretion." *Deason v. Stinson (In re Guardianship of Roshto)*, 134 So. 3d 739, 742 (Miss. 2014). Additionally, "[t]his Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (Miss. 2002)). The chancellor based her decision on

testimony and evidence from both parents regarding the differences between the public schools in Hernando and those in Lake Cormorant. The father testified that he wanted the children to go to Lake Cormorant because that is where Alicia Bryant, his current wife and the children's stepmother, is a teacher. He testified also that, if the children were to go to school in Lake Cormorant, they would have a one-way commute to the school of approximately thirty minutes. Both parents testified that they, the children, and the children's friends live in Hernando. The mother testified that the children attend church and play sports in Hernando. She also presented the respective rankings of the schools, which showed that Hernando's school was ranked second in the state, whereas Lake Cormorant's school was ranked eighty-eight in the state. Based on the testimony and evidence, the chancellor determined that it was in the children's best interest to attend school in Hernando. In her ruling, the chancellor recognized the benefit of children being in the same school as their stepmother, but she determined that "it [was] more important for the children not to have to have the 30-minute commute and to be in school in the town where they live." The chancellor made her decision in the best interest of the children, and the decision is supported by the evidence. Thus, we cannot say that the chancellor abused her discretion or that her decision was manifestly wrong.

¶18.    Lastly, the father argues that the Court of Appeals did not address the "chancellor modifying the private school tuition." The Court of Appeals, however, did recognize Kenneth's argument and addressed this issue simultaneously with his other issue in the case.

*Bryant*, 2021 WL 5802520, at *2. In his petition for writ of *certiorari*, he asserts that the mother had not proved any material change in her circumstances that affected her ability to pay the private school tuition. The father contends that the mother had presented no proof regarding changes in her income or the costs for the children to attend Magnolia Heights. But there was no need for a material change in circumstances to be shown because the property settlement agreement provides the chancellor the authority to address Jennifer Bryant's motion. Additionally, Section 17 states that the chancellor may reevaluate the matter upon motion from either party if a party is unable to afford tuition. In this case, the chancellor heard testimony from both parties that neither could afford private school tuition for the three minor children. Specifically, the chancellor determined that

> [The mother] said [the father] said he could not afford Magnolia Heights, either, which implies that she couldn't and he basically said he didn't think she could and so that's the reason he wasn't even considering Magnolia. . . . I'm going to consider [Section 17] already being triggered.

¶19. We do not find that the chancellor abused her discretion. While neither party submitted documentation showing its financial situation, both admitted ultimately that they could not afford to send all three minor children to Magnolia Heights. Therefore, the provision in Section 17 was triggered, and Jennifer Bryant was allowed to file a motion to ask the chancellor to determine which school the children should attend.

## CONCLUSION

¶20. The chancellor had authority to hear the motion filed by the mother pursuant to Section 17 of the property settlement agreement. As a child's superior guardian, the

14

chancellor has a duty always to act in the children's best interest. Therefore, a property settlement agreement cannot deprive the chancery court of its authority as superior guardian to make decisions that are in the best interest of children. Here, the chancellor's decision is supported by substantial evidence that attending school in Hernando is in the children's best interest. Therefore, we affirm the decision of the Court of Appeals to uphold the chancellor's judgment.

¶21. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL AND GRIFFIS, JJ. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶22. The majority finds the chancellor properly exercised authority in choosing not to follow the governing agreement, and, in doing so, misuses our caselaw to intrude the power of the government, here represented by the courts, into the decision of a parent regarding where to educate his children. I respectfully dissent.

> **The chancellor erred by determining where the children were to attend school.**

¶23. "A divorce agreement is 'no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.'" *Ivison v. Ivison*, 762 So. 2d 329, 334 (¶ 14) (Miss. 2000) (quoting *East v. East*, 493 So. 2d 927, 931–32 (Miss. 1986)). "[W]hen parties in a divorce proceeding

15

have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it just as we do when persons seek relief from improvident contracts." *Id.* The chancery court entered the divorce decree adopting the property settlement agreement on March 30, 2016. Once entered, it could only be modified in the event of a "material change in the circumstances with one or more of the parties." *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995) (citing *Thurman v. Thurman*, 559 So. 2d 1014, 1017 (Miss. 1990)).

¶24. Two provisions from the settlement agreement are relevant:

**11. CHILD CUSTODY AND VISITATION.**

The parties shall share joint legal and physical custody of the children . . . . Provided, however, in the event that the parties are unable to agree upon major life decisions affecting the child/children, the Father shall have the final decision making authority.

Section 17 addresses private school/child care:

**17. PRIVATE SCHOOL/CHILD CARE.**

Both the Mother and Father agree that the minor child, Baylor, is currently enrolled at Magnolia Heights School. Each party shall be responsible for one-half (1/2) of the costs of tuition and extra curricular costs for said minor child. Further, each party shall be responsible for uniforms and school lunches for the minor child while in their care.

Both parties agree that when it is time for the twins to attend 5 year old kindergarten, if either party is financially unable to afford tuition for the said minor children, the Court will reevaluate this matter upon Motion of either party.

¶25. Kenneth Bryant argues that Section 11 gives him the final say in major life decisions

involving the minor children. Because education is a major decision affecting the life of a child, he argues, he has the final say when he and Jennifer Bryant do not agree. Jennifer argues that Section 17 is more specific as to the education of the children, and, as such, controls over Section 11 which grants Kenneth primary authority regarding major life decisions affecting the minor children.

¶26. Importantly, the settlement agreement grants Kenneth and Jennifer joint legal custody, but in the event they do not agree on decisions affecting the children, Kenneth is the final decision-making authority. "'[J]oint legal custody' means that the parents or parties share the decision-making rights, the responsibilities and the authority relating to the health, education and welfare of a child." Miss. Code. Ann. § 93-5-24(5)(e) (Rev. 2021). However, it is not uncommon for a chancellor to grant joint legal custody of the children but grant one of the parents final decision-making authority regarding health, education, and welfare. *Wildman v. Wildman*, 301 So. 3d 787, 804 (¶ 36) (Miss. Ct. App. 2020). Such is the case here. Kenneth was granted final decision-making authority in the event that he and Jennifer could not agree on major life decisions affecting their children. Section 11 was a valid provision of the settlement agreement and should have been enforced absent fraud or overreaching. *See Ivison*, 762 So. 2d at 334 (¶ 14).

¶27. The majority's argument that Section 17 is more specific and controlling over Section 11 fails to persuade. While specific in proper context, it only allows the chancellor to reevaluate "this matter." The matter in question is not the children's education but rather

17

private school tuition and costs. Section 17 does not enable or empower the chancellor to override Kenneth's decision about the children's education in general, only his decisions relating to private school. It states that (a) both parents agree that the eldest child is enrolled in private school; (b) each party is responsible for half the costs; and (c) each party is responsible for uniforms and lunches while the eldest child is in their care. It then says: "Both parties agree that when it is time for the twins to attend 5 year old kindergarten, *if either party is financially unable to afford tuition* for the said minor children, the Court will reevaluate *this matter* upon Motion of either party. (Emphasis added.) "[T]his matter" refers to private school tuition—not where the children will attend school. In other words, the chancellor may reapportion tuition or decide that private school is not affordable. However, based on Section 17, the chancellor is not authorized to decide where the children will attend school.

¶28.   Two recent, very similar cases considered by the Court of Appeals, *Campbell v. Campbell*, 269 So. 3d 426 (Miss. Ct. App. 2018), *cert. denied*, 258 So. 3d 285 (Miss. 2018) (table), and *Collado v. Collado*, 282 So. 3d 1239 (Miss. Ct. App. 2019), are relevant here.

¶29.   In *Campbell*, the Court of Appeals reversed the chancellor's upward modification of child support and restored child support to the amount that the parties had agreed to in their child-custody and property-settlement agreement. *Campbell*, 269 So. 3d at 428 (¶ 2). The court reasoned, and we agree, that the parties' agreement "provided for th[e] exact situation" that had occurred in that case. *Id.* at 431 (¶ 16).

18

¶30.	In *Collado*, the Court of Appeals reversed and rendered a judgment that required the husband to continue paying private-school tuition. *Collado*, 282 So. 3d at 1240 (¶ 1). There, the child-custody and property-settlement agreement said the husband would continue paying for private school "so long as the parties jointly agree for the children to be enrolled in private school[.]" *Id.* at 1241 (¶ 2). The husband later decided that two of the children should attend public school. *Id.* at 1241 (¶ 3). The Court of Appeals said the parties' agreement had specifically contemplated such event. *Id.* at 1242–43 (¶ 12). So because no unforeseen material change in circumstances had occurred, the Court of Appeals held that the chancellor erred by ordering the husband to continue paying tuition. *Id.* at 1243 (¶ 13). We agree with the Court of Appeals' approach in both *Campbell* and *Collado*.

¶31.	Determining where the children will attend school is a "major life decision[] affecting the child/children." Importantly, when Jennifer and Kenneth cannot agree on such decisions, Section 11 gives Kenneth final decision-making authority. As a parent, he has a liberty interest in his children's education. *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925). The authority to make the final decision on major life decisions, which the settlement agreement granted to Kenneth, was approved by the chancery court and does not affect a chancellor's authority to modify it later. A settlement agreement granted based on irreconcilable differences is subject to modification. *Varner*, 666 So. 2d at 497. However, it can be modified only if a material change in circumstances for one or more parties to the agreement has occurred. *Id.* Here, no material

19

change in circumstances was alleged, much less proved.

¶32.    To justify its holding, the majority reaches back through the long years of decisions from the Court that describe the courts as the superior guardian of children.  Maj. Op. ¶ 13. However, none of the cases cited by the majority stand for the proposition that the courts may override the decision of a parent legally empowered to decide where his child should attend school.  *Mathews v. Williams (In re Conservatorship of Mathews)*, 633 So. 2d 1038 (Miss. 1994), involved the removal of a conservator for the estate of an elderly person.  *Hill v. Smith (In re Adoption of a Minor)*, 558 So. 2d 854 (Miss. 1990), involved grandparents who unsuccessfully challenged the adoption of the grandchild.  *Mississippi State Bar Association v. Moyo*, 525 So. 2d 1289 (Miss. 1988), was an attorney discipline matter.  In *Union Chevrolet Co. v. Arrington*, 162 Miss. 816, 138 So. 593 (1932) the Court considered whether statutes infringed on the constitutional role of the chancery courts to act as required in cases involving infants.  The majority correctly quotes *McManus v. Howard*, 569 So. 2d 1213 (Miss. 1990) (quoting *Pace v. Owens*, 511 So. 2d 489, 490 (Miss. 1987), in which we indeed wrote: "The welfare of the children and their best interest is the primary objective of the law, and the courts must not accord to contractual arrangements such importance as to turn the inquiry away from that goal."  However, the majority fails to note that the *McManus* Court applied the quoted principle to the issue of custody, holding that the parties may not agree to a custody arrangement that would result in a surrender of the chancery court's jurisdiction. *Id.* at 1216.  In *Bell v. Bell*, 572 So. 2d 841 (Miss. 1990), the Court expressly limited its

20

holding to "court decrees which require the children to live in one particular community in a state." In any event, the portion quoted by the majority pertains to the adoption by the chancery court of an agreement and does not apply here when an agreement—earlier approved and incorporated into the judgment—is in place and, absent a material change in circumstance or other valid reason, the chancellor refuses to enforce it. Maj. Op. ¶ 14.

¶33. By agreement of the parties and, more importantly, by court order approving it, the law gives Kenneth the authority to decide where the children of his marriage with Jennifer attend school. Without finding a material change in circumstances, that Kenneth is no longer competent to make such a decision, or any other basis to be found in the record to modify the earlier decree of divorce, the chancellor decided she disagreed with Kenneth and overrode his decision. I cannot concur with the majority's decision to use the power of Mississippi's courts to infringe on the decision of a parent, legally entitled, on where his children should be educated. *See*, ***Pierce,*** 268 U.S. at 534-35, 545 (recognizing that the Due Process Clause protects "the liberty of parents . . . to direct the upbringing and education of children under their control")

## CONCLUSION

¶34. Because the chancellor lacked the authority to override the Bryants' settlement agreement and determine where the children were to attend school, the chancellor erred by ruling that the children should be enrolled in the Hernando School District. I dissent based on the Bryants' settlement agreement, which provides that when the parties do not agree on

major life decisions, such as education, Kenneth retains the final decision. Jennifer did not argue—much less prove—that a material change in circumstances sufficient to amend the earlier divorce decree had occurred.

**MAXWELL AND GRIFFIS, JJ., JOIN THIS OPINION.**

**MAXWELL, JUSTICE, DISSENTING:**

¶35. I agree with the gist of Justice Coleman's dissent and point out my specific reasons for not joining the majority.

¶36. The majority acknowledges both Kenneth Bryant's constitutional rights as a parent and his contractual right under the settlement agreement "as the final decision maker regarding major life decisions for the children, including educational choices." Maj. Op. ¶ 13. Yet the majority undercuts a parental educational decision that was authorized by a prior court-approved settlement agreement. And it does so even though the mother has neither sought a custody modification nor alleged any material change in circumstances. On these facts I find the majority has stretched the superior guardian concept too far. Albeit unintentionally, the majority's opinion has potential to diminish parental rights in favor of court intervention.

¶37. The Bryant kids are children of divorced parents.[3] And their divorced parents disagree

---

[3] I would point out that the language from ***Bell*** about "[c]hildren of divorcing parents [being], in a very practical sense, wards of the court" was aimed at the divorce *process* and what chancellor must do "*before* approving an agreement regarding child custody or support[.]" ***Bell v. Bell***, 572 So. 2d 841, 845 (Miss. 1990) (emphasis added). ***Bell*** does not stand for the proposition that children of divorced (past tense) parents are perpetual wards

22

about where they should attend school. This is neither unusual nor extraordinary. In fact, *anticipating* they may not always agree about what is best for their children, Kenneth and Jennifer entered into a binding settlement agreement—*which the chancellor approved*. That written agreement stipulated Kenneth would be the final decision maker in this scenario. And exercising that authority, Kenneth chose one local public school district over another. Jennifer has not alleged any material change in circumstances. Simply finding a child would be better served at another school is not a valid basis for overriding the school choice of a parent with legal authority to make that choice. On these facts, I respectfully suggest there is no cause for court intervention.

¶38.    The Bryant children's rights have not been "prejudiced by any waiver, or omission or neglect or design of a guardian" that requires the court's correction. ***Union Chevrolet Co. v. Arrington***, 162 Miss. 816, 138 So. 593, 595 (1932). And there is no record evidence that Kenneth's educational decision—even if not the "best" decision in Jennifer's or the chancellor's view—"will jeopardize the health or safety of the child[ren]" or "have a potential for significant social burdens." ***Wisconsin v. Yoder***, 406 U.S. 205, 234, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). Again, all that has happened is that Kenneth, who has the authority to do so, has made an educational decision that Jennifer disagrees with—a decision contemplated by the chancellor-approved agreement. And I see no cause for this Court to

_____

of the state for whom the court may override a parent's previously court-authorized decision whenever the other parent complains. *See **id.***

23

ignore the settlement agreement's language giving Kenneth final decision-making authority.

**COLEMAN, J., JOINS THIS OPINION.**